FOND DU LAC COUNTY, Plaintiff-Respondent,

v.

Donald D. MENTZEL, Defendant-Appellant.

Court of Appeals

*No. 94–1924. Oral argument May 4, 1995.—Decided June 14,
1995.*

(Also reported in 536 N.W.2d 160.)

On behalf of the defendant-appellant, there were briefs by *Raymond M. Dall'Osto* and *Kathryn A. Keppel* of Milwaukee. There was oral argument by *Raymond M. Dall'Osto.*

On behalf of the plaintiff-respondent, there was a brief and oral argument by *Kathryn J. Haupt*, corporation counsel.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. Fond du Lac County has an ordinance requiring entertainers at Class B liquor establishments and dance halls to wear a minimal amount of clothing during performances, such as g-strings and pasties. We decide that although the ordinance is not unconstitutional as applied to Donald D. Mentzel, the owner of a Fond du Lac exotic nightclub, it is facially unconstitutional under the overbreadth doctrine because it encompasses nude expression which is not associated with harmful secondary effects. We reverse.

Mentzel's nightclub features entertainment consisting of nude and semi-nude female exotic dancing. His operation, however, has run afoul of a Fond du Lac County ordinance that requires Class B liquor license holders to obtain a cabaret permit before providing any form of dance entertainment. The ordinance forbids nudity, among other things, as a condition to using the

permit. The pertinent text of the ordinance is set forth below.[1]

[1]

## SECTION I

## CABARET LICENSE

### (Entertainment Featuring Dancing)

1. License required. No holder of a class 'B' liquor, beer license, or dance hall within the unincorporated area of Fond du Lac County shall afford to their patrons: entertainment which specifically features or advertises dancing by the performance of any act, stunt or dance by performers under the auspices of the management, whether such dancers are paid or not unless the owner shall first have obtained a Cabaret License from the County Clerk.

(a) This section all (sic) not apply to holders of temporary class 'B' licenses.

2. Regular License. An application for a license is to be made to the County Clerk. The County Clerk shall then notify the Town or Village wherein the proposed license is to be held, publish a class '1' notice of such application and have the license application referred to the PPP Committee of the Fond du Lac County Board of Supervisors within 30 days of application. The PPP Committee can take any testimony regarding the granting or denial of such license.

. . ..

4. Special Event License : A holder of a class 'B' liquor, beer or dance hall license within the unincorporated area of the county may apply for a special event cabaret license in lieu of obtaining a regular cabaret license. Such license will only be valid for a twenty-four (24) hour period.

. . ..

5. Regulations: No dancing shall be permitted by any performers under the auspices of the management whether paid or not, within three (3) feet of a bar over which patrons are directly served, while so entertaining the patrons.

(b) While dancing is in progress, the dance area shall be illuminated by at least two (2) foot candles per square foot.

. . ..

(h) The performance of any dance by performers under the auspices of the management shall be given only on a raised portion of

318

Mentzel was cited for violating this ordinance on three separate occasions. The trial court rejected several constitutional arguments raised by Mentzel and found him guilty of violating this licensing requirement. He now asserts that the County's regulatory scheme is vague and overbroad, and that it violates equal protection principles because this same type of entertainment is permitted in the City of Fond du Lac.

the floor separated by a railing or other device from the patrons so as to deter patrons from participating in the dance.

(i) Lewd and indecent performance. No license holder personally or through an agent or employee shall advertise or produce lewd, obscene or indecent performances.

(j) It is forbidden by this ordinance to perform acts or simulated acts of "sexual" intercourse, masturbation, sodomy, beastiality, oral copulation, flagellation, or any sexual acts which are prohibited by law, on the premises so licensed.

(k) The actual or simulated touching, carressing [sic] or fondling of the breasts, buttocks, anus or genitals is prohibited.

(l) The actual or simulated displaying of pubic hair, anus, vulva or genitals is prohibited.

(m) The permitting by a licensee, agent or employee of licensee, of any person to remain in or upon the licensed premises who exposes to public view any portion of his or her genitals or anus is prohibited.

(n) The displaying of films or pictures depicting acts, a live performance which is prohibited by the regulations quoted above is forbidden.

(o) The dancers must wear clothes or costumes which shall at a minimum consist of the following: be of non-transparent material, the top portion of the costume worn by females must completely cover the areola of the breast and the lower portion of the costume worn by both male and female dancers must completely cover the pubic area and cleavage of the buttocks

FOND DU LAC COUNTY, WIS., CABARET ORDINANCE § 1 (May 16, 1989).

The general analysis used when testing the constitutional validity of a statute is set forth in *State v. Mitchell,* 163 Wis. 2d 652, 658, 473 N.W.2d 1, 3 (Ct. App. 1991), *aff'd,* 178 Wis. 2d 597, 504 N.W.2d 610 (1993). Although a defendant normally bears the burden of establishing beyond a reasonable doubt that a statute is unconstitutional, because the ordinance at issue regulates the exercise of First Amendment rights, the burden is shifted to the government. *Id.* Although Mentzel comingles his three specific constitutional challenges into a single argument, his briefs and oral argument claims can be distilled to reveal the following basic assertions.

### *VAGUENESS*

Mentzel claims that the ordinance is unconstitutionally vague as applied to him because it does not clearly and unequivocally state that liquor establishments may not have nude dancing. He also notes that discussions with police and planning officials, as well as his own attorney, suggested to him that the statute could be interpreted several ways, but arguably would allow nude dancing provided that no alcohol is served at the establishment.

The two-prong test for vagueness assesses whether: (1) the ordinance is sufficiently definite to give persons of ordinary intelligence who seek to avoid its penalties fair notice of the conduct required or prohibited; and (2) the ordinance provides standards for those who enforce the laws and adjudicate guilt. *State v. McManus,* 152 Wis. 2d 113, 135, 447 N.W.2d 654, 662 (1989).

Setting aside his ruminations about how the ordinance could be interpreted, Mentzel fails to articulate how these standards are not met. Whether Mentzel was violating the provisions of the ordinance which specify the amount of clothing that the dancers must wear is completely irrelevant to his conviction. The statutory language is plain and simple. It requires that any Class B liquor license holder providing *any* form of dancing entertainment must also obtain a cabaret license. The relevant section specifically provides:

> License required No holder of a class 'B' liquor, beer license, or dance hall within the unincorporated area of Fond du Lac County shall afford to their patrons: entertainment which specifically features or advertises dancing by the performance of any act, stunt or dance by performers under the auspices of the management, whether such dancers are paid or not unless the owner shall first have obtained a Cabaret License from the County Clerk.

FOND DU LAC COUNTY, WIS., CABARET ORDINANCE § 1 (May 16, 1989). Even a cursory scan reveals how it entails a strict liability forfeiture with four elements: (1) whether the defendant is a Class B liquor license holder; (2) whether the holder has management control; (3) whether entertainment was provided; (4) whether management had a cabaret license. Mentzel was in possession of a Class B license, and the facility he operated featured dancing entertainment. There can be no legitimate debate that he featured the dancing entertainment even though he tried and was unable to obtain a license from the County. Mentzel argues that he attempted to get a license, but that the County summarily denied him that opportunity. His

remedy was not to forge ahead and feature nude dancing in any event. His proper remedy was to appeal the denial of the permit on grounds that the denial was arbitrary, capricious and denied him due process. He did not do so. He cannot now come to this court and complain. We conclude that Mentzel's arguments about the ordinance's various interpretations are not relevant.[2]

## *OVERBREADTH*

This line of inquiry is analytically distinguishable from vagueness. Overbreadth challenges seek to prevent government from promulgating sweeping regulations that touch upon constitutionally protected conduct. There is an underlying concern that if such regulations go unchecked, citizens will be deterred

---

[2] Mentzel also raises an objection to the burden of proof applied by the trial court. He asserts that the court erred because it did not find clear and convincing evidence to support his conviction. As our analysis reveals, however, the County's ordinance is couched in its general regulatory powers; it is not related to any criminal sanction. Thus, the trial court was correct in applying the preponderance standard. *See City of Milwaukee v. Wilson,* 96 Wis. 2d 11, 21-23, 291 N.W.2d 452, 458-59 (1980). We acknowledge, however, our interest in the issue. As Mentzel pointed out in his briefs, the burden of proof in municipal court is the middle burden. *See* § 800.08(3), STATS. If Fond du Lac had a municipal court, which it does not, there is a distinct possibility that this action would have been brought in the municipal court rather than the trial court. In that hypothetical instance, the middle burden would no doubt have applied. But since Mentzel has made no direct argument that the County's regulatory scheme denies him equal protection and, moreover, makes no argument respecting § 800.08(3) at all, we will not decide the issue.

322

from exercising their various rights, the so-called chilling effect. *See Mitchell*, 163 Wis. 2d at 663, 473 N.W.2d at 5. *See also NAACP v. Button*, 371 U.S. 415, 432 (1963). Given the rationale supporting application of this constitutional test, challengers need not limit their attack to arguments based on their own activities. They may also make use of hypotheticals to demonstrate how the challenged ordinance or statute could impede the rights of other citizens. *Mitchell*, 163 Wis. 2d at 663, 473 N.W.2d at 5.

The United States Supreme Court's most recent analysis of the First Amendment issues implicated in nude dancing was set forth in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991). There, the Court faced a claim that an Indiana statute prohibiting public nudity violated the First Amendment rights of owners of exotic clubs and professional exotic dancers. *Id.* at 562-63. Eight Justices concluded that nude dancing is expressive conduct and thus is entitled to constitutional protection. *See id.* at 565-66 (opinion of Rehnquist, C.J.) (joined by O'Connor and Kennedy, JJ.) (concluding "only marginally so"); *id.* at 581 (Souter, J., concurring) (concluding that nude dancing "is subject to a degree of First Amendment protection"); *see id.* at 587 (White, J., dissenting) (joined by Marshall, Blackmun and Stevens, JJ.); *but see id.* at 572 (Scalia, J., concurring) (concluding that nude dancing "is not subject to First-Amendment scrutiny at all").

The decision, however, was splintered on the issue of how government may reasonably regulate these protected expressions.[3] The plurality, led by Chief Justice

---

[3] For a detailed and artful analysis of why nude dancing should be a constitutionally protected expression, *see Miller v. Civil City of South Bend*, 904 F.2d 1081, 1089-1104 (7th Cir.

Rehnquist and Justice Souter in a concurring opinion, agreed that a "time, place and manner" analysis would be appropriate for assessing the legitimacy of state regulatory efforts in this arena. *Id.* at 566, 582. Both Chief Justice Rehnquist's opinion and Justice Souter's opinion applied the four-part test announced in *United States v. O'Brien*, 391 U.S. 367 (1968), which acknowledges that government may infringe upon the First Amendment freedoms in its effort to regulate certain conduct provided: (1) the targeted conduct falls within the domain of state regulatory power; (2) the statutory scheme furthers an important or substantial interest; (3) the state's regulatory efforts are unrelated to the suppression of free expression; and (4) the regulations are narrowly tailored. *See Barnes*, 501 U.S. at 566-67 (quoting *O'Brien*, 391 U.S. at 376-77).

The disagreement among the plurality in *Barnes* focused on the second and third prongs. Chief Justice Rehnquist and two other members of the plurality believed that a state's interest in promoting "morality" was a legitimate reason to suppress First Amendment rights. *Id.* at 568. Justice Souter's conclusion was narrower. He wrote that the states had a legitimate interest in regulating the "secondary effects" of adult entertainment. *Id.* at 582 (Souter, J., concurring). Secondary effects are defined by example, such as increased criminal activity and prostitution. *Id.* Justice Souter reasoned that these concerns justify state infringement upon the protected expression associated with nude dancing. *Id.* at 582-83.

Having visited at length the holding of the Court in *Barnes*, the next task for this court is to determine how we analyze the Fond du Lac ordinance in light of

1990) (Posner, J., concurring), *rev'd sub nom. Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991).

*Barnes.* If we follow Chief Justice Rehnquist's lead opinion, we review the Fond du Lac ordinance from the point of view that government can curtail nude dancing for reasons of morality. If we follow Justice Souter's opinion, then the proper question to ask is whether the ordinance is narrowly tailored to address the secondary effects of adult entertainment.

Simply because Chief Justice Rehnquist wrote the lead opinion in *Barnes* does not make it the law of the land. *Barnes* engendered four separate opinions, none of which commanded a majority of the justices. As pointed out by the court in *Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 133 (6th Cir. 1994), Chief Justice Rehnquist's attempt to win acceptance for the proposition that the enforcement of morality is a proper basis for limiting freedom of speech did not win majority support. Only Justices O'Connor and Kennedy joined the Rehnquist opinion. While Justice Souter agreed with Chief Justice Rehnquist in the ultimate result of the case, he identified material harms, not moral concerns, as the basis for restricting First Amendment protection for expressive conduct. *Id.* When lower courts are faced with fractured decisions of the United States Supreme Court, the Court has decreed the use of what is known as the "Marks Rule." This rule, taken from *Marks v. United States*, 430 U.S. 188, 193 (1977), holds that when the Court issues a fractured plurality decision, the opinion of the Justice concurring in the judgment on the "narrowest grounds" should be regarded as the Court's holding.

Applying the "Marks Rule," we conclude, as did the Sixth Circuit in *Triplett Grille*, that Justice Souter's concurring opinion offers the narrowest ground. This is

325

so because the narrowest ground is found when a concurring opinion articulates a legal standard with which a majority of the court from that case would agree. We agree with the court in *Triplett Grille* that as a logical consequence of their approval of morality justifications for regulations of speech, Chief Justice Rehnquist, Justice O'Connor and Justice Kennedy implicitly agree with Justice Souter that governmental efforts to control the harmful secondary effects associated with adult entertainment can serve as a basis for restricting activities that enjoy First Amendment protection. *Triplett Grille*, 40 F.3d at 134. We will apply Justice Souter's reasoning in reviewing the Fond du Lac County ordinance regarding the overbreadth issue.[4]

For purposes of the overbreadth challenge then, the question is whether the ordinance is targeted at only curbing the harmful secondary effects associated with exotic clubs or whether other expressive conduct which does not create harmful secondary effects needlessly falls into its net. A plain reading of the ordinance reveals that many other forms of unclothed entertainment that do not effectuate secondary concerns would be subject to the ordinance. *See Barnes*, 501 U.S. at 585 n.2 (Souter, J., concurring); *Triplett Grille*, 40 F.3d at 136 (recognizing that musical production of *Hair* would be prohibited under the challenged ordinance). As conceded by the County, a modern dance performed by members of the New York City Ballet, of which nude dance is a part, would be prohibited by the ordinance if offered in a venue that had liquor on the premises, such

---

[4] We note that, at oral argument, the County agreed that Justice Souter's concurring opinion presented the "narrowest grounds" and that we should follow his reasoning in assessing the ordinance.

as a dinner theatre. Yet the County cannot point to any harmful secondary effects emanating from such a performance, such as prostitution or criminal activity. The ordinance is simply too broad. It takes in not only Mentzel's nightclub dancing (which in our opinion it has the right to do) but forms of expression that are not associated with harmful secondary effects. We must underscore that whether certain members of the Fond du Lac community may believe, for instance, that a male erotic dance by a ballet company performing Diaghilev's *L'apres midi d'un faune* (1912) is immoral is not grounds for prohibition by the County. *See Miller v. Civil City of South Bend*, 904 F.2d 1081, 1090 (7th Cir. 1990) (Posner, J., concurring), *rev'd sub nom. Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991).

It is not our job to tailor the ordinance so that it passes constitutional muster. Nonetheless, we are convinced that the County can undoubtedly promulgate an ordinance to curtail and even prohibit the operation of totally nude exotic dance clubs. It simply needs to craft an ordinance which is tailored towards mitigating the harmful secondary effects arising from these establishments. For example, the ordinance could better distinguish between bars and dance halls.[5] Moreover, since nude artistic events that this ordinance could curtail would not normally be associated with harmful secondary effects, the better drafted ordinance would recognize this distinction.[6] And, the County may wish

[5] In *California v. LaRue*, 409 U.S. 109, 115 (1972) and other cases cited by the County, courts have recognized that the Twenty-first Amendment affords local government more police power to proscribe this type of conduct when it is associated with the service of alcoholic beverages.

[6] For example, the City of Milwaukee exempts ballet organizations from the general permitting requirements for dance

to better assess what geographic areas are not suitable for these establishments. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 54 (1986).[7] The ordinance could also embody a more formalized licensing and administrative appeals process. *See Redner v. Dean*, 29 F.3d 1495, 1501 (11th Cir. 1994) (requiring specified time limits on government licensing process), *cert. denied*, 115 S. Ct. 1697 (1995).

Before leaving the overbreadth subject, we observe that just as the *Triplett Grille* court was "loathe to find that the Akron public decency statute violates the First Amendment," we feel likewise about the County's cabaret ordinance. *See Triplett Grille*, 40 F.3d at 136. However, like the court in *Triplet Grille*, we are unable to save the ordinance. Under the rules of overbreadth, Mentzel will avoid this forfeiture not because he

halls and taverns. CITY OF MILWAUKEE, WIS., CODE § 108-2.2 (1989).

[7] In *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41 (1986), the Court upheld an ordinance prohibiting similar adult enterprises from locating within 1000 feet of a residential zone, school, park or church. Justice Rehnquist concluded:

> In sum, we find that the Renton ordinance represents a valid governmental response to the "admittedly serious problems" created by adult theaters. Renton has not used "the power to zone as a pretext for suppressing expression," but rather has sought to make some areas available for adult theaters and their patrons, while at the same time preserving the quality of life in the community at large by preventing those theaters from locating in other areas. This, after all, is the essence of zoning. Here, as in *American Mini Theatres,* the city has enacted a zoning ordinance that meets these goals while also satisfying the dictates of the First Amendment.

*Id.* at 54-55 (quoting *Young v. American Mini Theatres*, 427 U.S. 50 (1976) (citations omitted)).

retains First Amendment protection from the ordinance, but because others do.[8]

## *EQUAL PROTECTION*

In the interests of completeness, we will briefly address Mentzel's equal protection argument. Mentzel attacks the regulatory disparity between the unincorporated and incorporated areas of Fond du Lac County; exotic clubs of the type he would like to operate are permitted in some areas but not in others. However, as we have already suggested, the County, and all the jurisdictions within the County, may each use their police power to limit the geographic areas in which these activities may take place. Thus, the discrepancies that Mentzel complains about are the natural result of any type of *systematic zoning*. That these various plans have incidental effects on the protected expression occurring in these facilities does not create any constitutional concerns.

*By the Court.*—Judgment reversed.

---

[8] This is what distinguishes this case from *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991). In *Barnes*, there was no overbreadth challenge. At oral argument, the County argued that just as the United States Supreme Court was able to uphold the Indiana statute at issue in that case, we should be able to do the same. However, overbreadth broadens the challenge.