Town of Wayne, Plaintiff-Respondent,†

v.

Daniel L. Bishop, Mark Phillips and Special Souvenirs, Inc., Defendants-Appellants,

Richard A. Cassel, Sr. and Scott Pecor, d/b/a Cassel-Pecor Investments, Defendants.

Court of Appeals

*No. 95–2387. Submitted on briefs February 24, 1997.—Decided April 16, 1997.*

(Also reported in 565 N.W.2d 201.)

†Petition to review denied.

For the defendants-appellants, the cause was submitted on the briefs of *Percy L. Julian, Jr.,* of *Julian, Olson & Lasker, S.C.,* of Madison and *Jeff Scott Olson* of Madison.

For the plaintiff-respondent, the cause was submitted on the briefs of *H. Stanley Riffle* of *Arenz, Molter, Macy & Riffle, S.C.,* of Waukesha.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J.   The primary issue in the case relates to the Town of Wayne's attempt to prosecute adult bookstore operators for zoning and building occupancy code violations. All told, the circuit court imposed civil forfeitures of over $80,000. The defendants argued that the Town impermissibly restricted their free speech rights when it changed the substantive zoning code to make it impossible for the defendants to get the

otherwise necessary zoning and building occupancy permits, thereby effectively banning this type of business from the Town.

The circuit court found that the defendants had no standing to raise their constitutional claim because they did not even try to get the permits or bring a complaint before the Town's zoning agencies. The court accepted the Town's claim that the substantive elements of the zoning code were separate and distinct from the general zoning and building occupancy rules within the code.

We hold, however, that the defendants did have standing to raise their constitutional challenge and that they are correct on the merits. We must examine the Town's zoning scheme as a whole. And, when we do, we conclude that it worked as an unconstitutional prior restraint on the defendants' First Amendment rights. We thus reverse the elements of the judgment relating to the zoning and building occupancy violations.

## INTRODUCTION

The circuit court entered summary judgment against the defendants[1] and set total forfeitures at $85,480. This total was allocated to three local code violations in the following manner:

---

[1] The judgment was specifically entered against Special Souvenirs, Inc., Daniel L. Bishop and Mark Phillips, who were deemed jointly and severally liable.

| Description | Forfeiture | |
|---|---:|---|
| no zoning permit | $42,000 | ($250 per day for 168 days) |
| no certificate of occupancy | 16,800 | ($100 per day for 168 days) |
| no plumbing permit | 1,680 | ($10 per day for 168 days) |
| costs of prosecution | 25,000 | (reasonable attorney fees) |
| **Total** | $85,480 | |

The defendants have asserted a nine-prong attack on this judgment. While we have set out a list of all the issues that they identified in the margin,[2] we do not have to address each one to successfully gauge the mer-

---

[2] The defendants presented the following nine issues for review:

1. Did the defendants lack standing to challenge the town's new adult zoning ordinance and its zoning permit and occupancy certificate procedures because they had not applied for a conditional use permit, a zoning permit, or an occupancy certificate under these ordinances?

2. Was the town's new adult zoning ordinance unconstitutional as applied to these defendants because there was no location in the town in which an adult use could lawfully be situated?

3. Are the town's zoning permit and occupancy certificate ordinances unconstitutional as applied to these defendants because they do not include specified periods of time within which decisions must be made on applications and because they do not afford prompt judicial review of denials?

4. Was there any admissible evidence in the record that any defendant performed interior plumbing work without a permit?

5. Did each defendant waive all objections to these prosecutions because none of them appealed to the zoning board of appeals from the notice of non-compliance of May 7, 1993?

6. Were the individual corporate officers personally liable for ordinance violations attributable to the corporation?

7. Did the circuit judge impose unreasonably high forfeitures?

8. Was it appropriate to make the individual defendants and the defendant corporation jointly and severally liable for payment of the forfeitures?

its of this controversy. We will confine our analysis to the following five issues:

1. Whether the defendants have standing to raise their First Amendment challenge to the Town's whole zoning scheme? .

2. Whether the Town's whole zoning scheme worked as an impermissible "prior restraint" of their free speech rights?

3. Whether the circuit court properly awarded summary judgment to the Town on the plumbing violation?

4. Whether the circuit court properly included the Town's attorney's fees as a cost of prosecution?

5. Whether the circuit court properly found the defendants jointly and severally liable?

We will begin by setting out some pertinent background information. Further factual details will be forthcoming where necessary.

## BACKGROUND

In December 1992, the defendants leased property in the Town. They planned to operate a store offering, as they termed them, "sexually explicit materials."

At this same time, however, the Town was in the process of amending its zoning ordinances to address the planning issues associated with adult-oriented businesses. In January 1993, the Town passed an ordinance that amended the substantive zoning code; it redefined some of the existing commercial zoning classifications and placed special restrictions on

9. Was the trial court authorized to award the plaintiff its actual attorneys' fees against the defendants?

"commercial establishments" that sold books and films depicting "sexual conduct" or "nudity." *See* TOWN OF WAYNE, WIS., ORDINANCE No. 93–1, § 1.26(3)(v). The parties refer to this ordinance as "No. 93–1," and to eliminate possible confusion, we will also. Number 93–1 defined the types of materials that fell within the above two categories. *See* § 1.26(3)(vi). Moreover, No. 93–1 mandated that stores offering these materials needed to apply for a "conditional use permit" and could only locate in the commercial "B–2" district. *See* § 1.26(3)(vii). The stated policy of No. 93–1 was to generally "protect the public health, safety, welfare and morals of the community" by restricting the "location of defined materials and activities consistent with the Town's interest in the present and future character of its community development." *See* § 1.26(3)(viii).

This new ordinance, however, created a problem for the defendants. First, the property they leased was located in a "B–1" district, and therefore, they could not use it for their planned store. In addition, although the Town designated the "B–2" district as suitable for such a business, the Town did not designate any areas with that classification. The net result was that the defendants had no place to permissibly operate their planned store.

The defendants responded in two ways. First, they filed suit in federal district court challenging the constitutionality of No. 93–1 and seeking to enjoin the Town from enforcing it. Next, and more important to this controversy, the defendants proceeded to open their store anyway, without bothering to get the otherwise necessary zoning and building occupancy permits.

In early May 1993, the Town posted a "stop work" order at the defendants' store. An inspection revealed that the defendants had changed the use of the prop-

erty (into an adult bookstore) without obtaining the zoning and building occupancy permits necessary for any new business. The Town cited the defendants for failing to obtain a zoning permit and a certificate of occupancy. *See* TOWN OF WAYNE, WIS., ZONING ORDINANCE § 1.01(2) and TOWN OF WAYNE, WIS., BUILDING CODE § 30.11(3). Additionally, the Town cited the defendants for performing plumbing work without a permit. *See* TOWN OF WAYNE, WIS., PLUMBING CODE § 1.02(2). After the defendants failed to cure these violations or appeal them to the local zoning agencies, the Town initiated suit in September 1993, seeking injunctive relief and civil forfeitures.

The circuit court entered a temporary injunction on October 21. This order closed the store until the ongoing controversy could be resolved. The defendants then filed a petition with this court seeking a stay of the injunction and leave to appeal this nonfinal order. Here, the defendants alleged that No. 93–1, and thus the injunction, violated their First Amendment rights. We denied review at that time, however, noting that the then ongoing litigation in federal district court would adequately resolve this constitutional issue.

But by this time, the federal litigation had drawn closer to completion. Although the parties do not elaborate on that matter in their briefs, the record reveals that the defendants withdrew their motion for an injunction to bar the Town from enforcing No. 93–1 after the Town stipulated that it would halt any enforcement of the ordinance against the defendants. Even though the federal litigation was temporarily stalled, the defendants recast their First Amendment challenge as a counterclaim in the zoning and building occupancy enforcement action which was still proceeding in the circuit court.

By March 1994, the Town and the defendants had each moved for summary judgment. The Town sought a permanent injunction barring the defendants from operating this store, as well as civil forfeitures and the costs of enforcement. On the other side, the defendants argued that No. 93–1 was facially unconstitutional and that the Town was trying to implicitly enforce it through the general zoning and building occupancy codes. The defendants separately argued that the Town had no proof to support the plumbing code violation. The defendants sought injunctive relief, lost profit damages and attorney's fees.

The circuit court ruled for the Town. It accepted the Town's argument that the general zoning and building occupancy provisions were distinct from the substantive restrictions within No. 93–1. The court further reasoned that the defendants waived their right to pursue their constitutional claim because they did not participate in the Town's administrative appeal process, which the court found was the "exclusive remedy" available to the defendants. Although the court noted that No. 93–1 "might have been found unconstitutional," it found that the Town was merely citing the defendants for their failure to obtain the same permits that all businesses had to obtain. Because the defendants had failed to comply with these administrative requirements, the court found that they had no "standing" to argue "constitutionality." With regard to the plumbing code violation, the court found that there was no dispute of material fact that the defendants performed plumbing work at the store and did not have the necessary permit.

The court later held an evidentiary hearing to determine appropriate forfeitures. Here, emphasizing that the defendants' violations of the zoning and build-

ing occupancy codes were "willful and knowing" and that the defendants "ignored the town's sensitivities," the court assessed total forfeitures and costs of over $85,000.

Before we turn to the five issues raised in this appeal, we emphasize that our analysis is confined to assessing the validity of the judgment entered against the defendants. Although, as we explain below, we are required to consider the merits of No. 93–1 to properly analyze this judgment, the defendants have not requested that we declare No. 93–1 void. In fact, the parties both represent in their briefs that they have reached a settlement which permits the defendants to operate their store in the future.

### CONSTITUTIONAL CHALLENGES TO ZONING AND BUILDING CODE ENFORCEMENT

Our analysis of the constitutional issues in this case requires that we measure the relationship between the new substantive rules embodied in No. 93–1 and the provisions of the zoning, building and plumbing ordinances that the defendants actually violated.

The defendants argue that we must look at the Town's zoning regulations as a whole. Because the substantive restrictions within No. 93–1 prevented them from opening their business anywhere within the Town, they argue that trying to comply with the general zoning and building occupancy provisions would have been "futile."

The Town maintains, however, that "[t]his matter involves nothing more than enforcement of certain code provisions which are applicable to all new businesses locating within the Town of Wayne." They argue that we should affirm the trial court's analysis and hold

that the defendants cannot mount a substantive challenge to No. 93–1 because they never even tried to get a zoning or building occupancy permit. The Town contends that "[i]f they had applied for the necessary permits initially, rather than opening the doors of their business in blatant disregard of the Town Code requirement, they would have known quickly that Ordinance #93–1 would not be applied against them."

Citing to various Supreme Court cases, the defendants argue that they did not have to pursue their administrative remedies to have standing to challenge No. 93–1 because the Town's whole zoning scheme acted as a "prior restraint." *See City of Lakeview v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757 (1988). The defendants describe how the Town's zoning scheme effectively restricted individuals from engaging in an expressive activity because an individual facing No. 93–1 would think that he or she had to obtain the Town's permission before opening an adult bookstore. *See id.* They add that the Court has granted individuals standing to challenge similar ordinances even when they never tried to obtain the required license. *See id.* at 755–56. The defendants further note that the Court has granted standing in these circumstances out of concern over possible "censorship." *See id.* at 757.

What we face in this case, however, differs slightly from the "typical" prior restraint challenge. Although No. 93–1 established a permit requirement—the proposed operator had to obtain a special "conditional use permit," *see* ORDINANCE NO. 93–1, § 1.26(3)(vii)—the Town emphasizes that it actually cited the defendants for not having the zoning and building occupancy permits that are required for all businesses. The Town adds that we should consider *New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1 (1988), which

it asserts "set forth very stringent guidelines which must be met before a court will consider [a facial] challenge."

Nonetheless, the fact that the Town specifically cited the defendants for violating the generally applicable zoning and building occupancy ordinances does not affect our analysis of whether the defendants may challenge the substantive restrictions within No. 93–1. Indeed, the Supreme Court rejected similar line-drawing in *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215 (1990). There, the Court faced a challenge to the city of Dallas's licensing scheme for adult-oriented businesses. At the outset, the city of Dallas likewise suggested that the challengers did not have standing to assert their facial attack. *See id*. at 223. The city noted that it required all businesses to obtain a "certificate of occupancy" and argued that requiring owners of adult-oriented businesses to get a license did not create enough of a risk of censorship that immediate, facial judicial scrutiny was warranted. *See id*. at 225. The Court nonetheless rejected that argument, responding:

> [E]ven assuming the correctness of the city's representation of its "general" inspection scheme, the scheme involved here is more onerous with respect to sexually oriented businesses than with respect to the vast majority of other businesses.

*Id*. The Court then concluded that the challengers had standing to bring their facial attack on the city's licensing scheme. *See id*.

We apply the reasoning within *FW/PBS* and hold that the defendants have standing to raise their substantive challenge to No. 93–1 as a defense to the zoning and building occupancy violations. The Town

229

created special rules for adult bookstores. *See* OR-DINANCE NO. 93–1, § 1.26(3)(v). The Town required that these businesses obtain a "conditional use permit." *See id.* And because the Town decided to place adult bookstores in a special class, under *FW/PBS*, the Town may not now claim that it is simply treating these stores as it would any other business. We reverse the circuit court's finding that the defendants did not have standing to raise their First Amendment-related arguments.

The conclusion that the defendants have standing now brings us to the merits of the defendants' First Amendment claim. It goes as follows. The Supreme Court held in *Young v. American Mini Theaters, Inc.,* 427 U.S. 50, 71–72 (1976), that a municipality may use its zoning ordinances to regulate the location of adult-oriented establishments, even when those restrictions relate to the content of the speech *produced* at those establishments. But while the *Young* decision opened the door to this form of municipal regulation, the defendants emphasize how the Court nonetheless limited that holding by stating: "[T]he First Amendment will not tolerate the *total suppression* of erotic materials that have some arguably artistic value." *Id.* at 70 (emphasis added). The defendants accuse the Town of trying to enforce an impermissible total ban by not setting aside any area within the Town limits where adult bookstores could permissibly operate.

The Town responds that the defendants have not proved their claim.[3] It contends that the defendants never placed evidence in the record indicating that No. 93–1 was ever applied against them. In fact, the Town

---

[3] The Town's brief provides:

To begin with, it is clear that the Defendants have not shown to this court that every application of the Town code would create an impermissible risk of suppression of ideas.

reports that No. 93–1 has since been repealed and that the defendants have obtained all the necessary permits. Finally, the Town again emphasizes that the code provisions in question do not "relate" to the "suppression of ideas." We nonetheless reject the Town's various arguments for the following two reasons.

First, we observe that the Town, not the defendants, carries the burden of proving that its actions did not impermissibly infringe on the defendants' First Amendment rights. While a defendant normally has the burden of establishing beyond a reasonable doubt that an ordinance is unconstitutional, when the ordinance concerns the exercise of First Amendment rights, the burden reverses. *See Fond du Lac County v. Mentzel,* 195 Wis. 2d 313, 320, 536 N.W.2d 160, 163 (Ct. App. 1995). So contrary to the Town's assertion, the defendants do not have to prove that No. 93–1 would be applied to them, nor do they have to explain exactly how No. 93–1 suppresses free speech. Rather, since the defendants have alleged a First Amendment violation, the Town has the burden of establishing that No. 93–1 was a permissible land-use regulation and not an impermissible prior restraint. *See Young,* 427 U.S. at 71–72.

Second, even on the merits, we see that the Town is simply rekindling the argument that we can somehow bifurcate the zoning and building occupancy violations that the defendants were cited for from the substantive provisions within No. 93–1. As we explained above, however, we must look at the Town's whole zoning scheme. A party facing the Town's new ordinance could not be expected to differentiate between its substantive portions and its enforcement provisions.

231

In sum, we reject the Town's argument that it could rightfully enforce its zoning and building occupancy codes against the defendants regardless of any flaws in the substantive rules embodied in No. 93–1. The Town stepped out beyond what it was implicitly authorized to do under *Young*. It did not set aside any area where adult bookstores could lawfully operate and thereby manipulated its whole scheme of zoning and building occupancy codes to achieve an impermissible *total ban* on the distribution of adult-oriented, expressive materials. *See id.* at 70. We reverse those portions of the judgment relating to the defendants' violation of the Town's zoning and building occupancy codes.

### PLUMBING CODE VIOLATION

The defendants challenge whether the Town presented sufficient facts to support the plumbing code violation within the judgment. They do not raise any constitutional arguments.

We independently review the decision to award summary judgment. *See Preloznik v. City of Madison*, 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). We will start with the Town's argument concerning why it is entitled to judgment as a matter of law. The subject ordinance provides:

> 1.02.   <u>PLUMBING CODE ESTABLISHED.</u> (1) All plumbing work as described in sec. 145.01(10), Wis. Stats., shall be done in conformity with chs. ILHR 81 to 86, Wis. Adm. Code as amended.
>
> (2)   No plumbing work, having a cost of $200.00 or more, shall be installed without first obtaining a Town permit.

PLUMBING CODE § 1.02(2). The Town argues that the defendants violated this ordinance because they performed plumbing work at the premises and did not have a permit.

The Town supports this claim with the affidavit of its building inspector. In this affidavit, the inspector explains that the defendants owned and operated the subject bookstore and that plumbing work was performed at this property, specifically, that the interior fixtures were connected to an exterior holding tank. The inspector also explains that his files show that the defendants never obtained a permit to perform this plumbing work.

On appeal, the defendants attack the validity of the building inspector's affidavit. They conducted a deposition of the inspector. During the deposition, the inspector admitted that his statements concerning the plumbing work were only based on inferences he drew from a site inspection. He conceded that he never saw them performing this work. Indeed, during this deposition the inspector clarified that he only told the defendants that they appeared to be in violation, thus, giving them the "opportunity to tell me differently."

The conflict between the inspector's affidavit and his deposition testimony presents a material dispute. In light of the inspector's deposition, we cannot be certain whether the plumbing work was actually performed, and if it was performed, when it was performed.

The Town nonetheless argues that the inspector's deposition testimony was never presented to the circuit court before it rendered judgment and thus we should not consider it on appeal. *See Super Valu Stores, Inc. v. D-Mart Food Stores, Inc.*, 146 Wis. 2d 568, 573, 431 N.W.2d 721, 724 (Ct. App. 1988) ("We address [motions

for summary judgment] on the record as it existed when they were decided by the trial court, not on a record expanded by the testimony at trial."). In reply, the defendants contend that the necessary facts were indeed before the circuit court at the right time. We will therefore turn to the record to determine when the inspector's actual deposition was placed in the record and made available to the court.

Our review shows the following series of events. The defendants conducted the inspector's deposition on March 3, 1994. While the defendants' original brief in opposition to summary judgment was also filed on March 3 (and of course makes no mention of the inspector's deposition), the defendants' counsel later told the circuit court about this deposition during a hearing on March 8, 1994. Counsel stated that "[w]e are actually now ready to file . . . that deposition with the Court."

The court agreed to wait and permitted the parties to file supplemental briefs before making a ruling on summary judgment. The defendants filed their supplemental brief on September 8, 1994. This brief, moreover, plainly describes why the court should consider the inspector's seemingly contradictory deposition testimony in its summary judgment analysis.

The next relevant entry in the record is the March 3, 1995 hearing where the circuit court announced that it was awarding judgment to the Town. In its oral ruling, the court explained that it was relying on the building inspector's affidavit that the Town furnished to support its claim. The court found that this affidavit conclusively demonstrated that the defendants had violated this ordinance.

Although the circuit court did not discuss the contradictory evidence contained within the inspector's

deposition, it does not appear that the deposition was placed in the record before the court issued its ruling. This deposition is in the record now, but the clerk of court's date stamp reads that it was filed on April 28, 1995, almost two months after the circuit court awarded summary judgment to the Town.

The date stamp is usually accepted as proof of the date of filing. *See Boston Old Colony Ins. Co. v. International Rectifier Corp.*, 91 Wis. 2d 813, 822, 284 N.W.2d 93, 97 (1979). As the defendants have not provided us with an alternative explanation (or proof) for why we should conclude otherwise, we hold the defendants to the rule that information not in the record at the time summary judgment is awarded will not be considered by this court on appeal. *See Super Valu Stores*, 146 Wis. 2d at 573, 431 N.W.2d at 724. And without the inspector's deposition testimony, the defendants have no evidence to rebut the Town's claim. We affirm the circuit court's decision to award summary judgment to the Town on the plumbing violation.

### ATTORNEY'S FEES AS A COST OF PROSECUTION

A municipality is entitled to recover the costs of prosecution as part of the forfeiture for an ordinance violation. *See* §§ 66.12(1)(c) and 800.09(1), STATS. The defendants argue, however, that the circuit court made a legal error when it added to the costs of prosecution a $25,000 award which was based on the Town's attorney's fees. We agree.

We faced this same claim in *Town of Mt. Pleasant v. Werlien*, 119 Wis. 2d 90, 91, 349 N.W.2d 102, 103 (Ct. App. 1984), and held that "the imposition of actual attorney fees was an improper item of the 'costs of

prosecution.' " There, the defendant was found guilty of a town ordinance and was fined $100 plus costs, including over $4000 for attorney's fees. We analyzed the statute authorizing municipalities to recover the costs of prosecution and determined that it did not authorize the collection of attorney's fees as a part of such costs. *See id*. at 92–93, 349 N.W.2d at 104. The holding of *Mt. Pleasant* is squarely on point and demands that we reverse the portion of the judgment relating to the Town's attorney's fees.

## JOINT AND SEVERAL LIABILITY

Having set aside the zoning and building occupancy code violations, and the award related to the Town's attorney's fees, all that remains is the forfeiture of $1680 for the plumbing code violation. We now address whether the circuit court properly made the defendants jointly and severally liable for this amount.

■■

Here, the defendants argue that their store was officially operated by a corporation[4] and that the circuit court erred when it entered judgment against them personally. The defendants acknowledge that a court may look beyond a firm's legal form when the individuals in control of the business have violated the law in the name of the business. *See State v. Kuhn*, 178 Wis. 2d 428, 432, 504 N.W.2d 405, 407 (Ct. App. 1993).[5]

---

[4] *See* Note 1, *supra*.

[5] We recognize that the panel in *State v. Kuhn*, 178 Wis. 2d 428, 432, 504 N.W.2d 405, 407 (Ct. App. 1993), emphasized that it was looking beyond the business form (and holding the defendant personally liable) because the defendant violated the "criminal" law. There, the panel specifically used the term "criminal" to distinguish its holding from other decisions which prohibited a court from looking beyond a business form in pri-

236

Still, they contend that the circuit court had no factual basis on which to ground that decision.

We have reviewed the record and conclude that the circuit court had a sufficient factual basis. The Town correctly identifies parts of the record where it showed the court that each of the defendants was personally involved with the business. For example, at the initial evidentiary hearing to set forfeitures, the Town's building inspector explained how he told each of the defendants that they were operating their store in violation of local codes. The inspector further testified that during another site visit, when both of the defendants were present, one of them told him that they intended to get the necessary permits so that the store would no longer be in violation.

We conclude that the record supports the circuit court's judgment. The record clearly reveals that each defendant was involved with the store's daily operation and that each defendant knew about the plumbing violation. We hold that the circuit court properly made the defendants jointly and severally liable.

## CONCLUSION

We hold that the Town's zoning scheme impermissibly infringed upon the defendants' First Amendment rights. We therefore reverse the zoning and building occupancy violations that were related to this invalid zoning scheme. We also reverse the portion of the judgment awarding the Town its attorney's fees as a cost of

---

vate "civil" lawsuits. *See id*. While the Town has pursued the defendants in a "civil" forum, it alleges that they are using their business form to evade public regulatory laws. We therefore deem the discussion in *Kuhn* about setting aside a firm's business form in the criminal law context applicable to this case.

prosecution. Nonetheless, we affirm the circuit court's finding that the defendants violated the Town's plumbing code. We uphold the circuit court's decision to award summary judgment to the Town on that matter and its decision to make the defendants jointly and severally liable for the resulting forfeiture.

No costs to either party.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded.