**SPECIAL SOUVENIRS, INC., Plaintiff,**

v.

**TOWN OF WAYNE, Defendant
(Two cases).**

**Nos. 93–C–518, 95–C–488.**

United States District Court,
E.D. Wisconsin.

July 7, 1999.

1064

Jeff Scott Olson, Madison, WI, for Plaintiff.

Eric S. Darling, Milwaukee, WI, H. Stanley Riffle, Waukesha, WI, for Defendant.

### DECISION AND ORDER

ADELMAN, District Judge.

This decision confronts the complex interaction of three cases involving the same parties and subject matter, two pending in federal court before me and one in state court. Specifically, the decision (1) rejects the suggestion that this court should abstain from the exercise of federal jurisdiction; (2) resolves all pending motions in the first federal action, addressing arguments based on standing, mootness, ripeness and preclusion; (3) resolves all pending motions in the second federal action on the constitutional merits; and (4) consolidates the federal cases for future processing.

## I. PROCEDURAL HISTORY

The Town of Wayne is a Wisconsin township approximately thirty miles northwest of Milwaukee just east of Highway 41, and is home to about 1500 people.[1] In December 1992, Special Souvenirs, Inc., leased property in the Town of Wayne with the intention of opening an adult book, magazine and video store. At about this time, the Town was in the process of amending its zoning ordinances to address planning issues associated with adult-oriented businesses.

On January 25, 1993, the Town enacted Ordinance No. 93–1, which redefined several zoning classifications and placed special restrictions on commercial establishments offering materials depicting "sexual conduct" or "nudity." See Town of Wayne, Wis., Ordinance No. 93–1, § 1.26(3)(v) (1993). The ordinance placed two conditions on the opening of such a commercial establishment: (1) it had to be located in a "B–2" commercial district; and (2) it had to be granted a conditional use permit. Id., § 1.26(3)(vii). The second condition, to obtain a conditional use permit, appears to have existed prior to the passage of Ordinance No. 93–1; however, the new ordinance included eight additional provisions governing the granting of such permits by the Town Board. Id.

The property leased by Special Souvenirs was located in a "B–1" commercial district. Moreover, the Town had failed to designate any areas as "B–2" commercial districts, the result being that the adult bookstore could not lawfully operate anywhere in town. Special Souvenirs nevertheless opened its doors in May 1993.

In addition, on May 24, 1993, the bookstore filed the first of two civil rights actions against the Town in federal court. The first action, Case No. 93–C–518 in the Eastern District of Wisconsin, was filed pursuant to 42 U.S.C. § 1983 and sought (1) a declaratory judgment that "the Town of Wayne adult use zoning scheme embod-

ied in Ordinance No. 93–1 is invalid because it violates rights secured to the plaintiff by the First and Fourteenth Amendments to the United States Constitution"; (2) a permanent injunction enjoining the enforcement of Ordinance No. 93–1 by the Town; and (3) compensatory damages, costs, attorneys' fees and litigation expenses. (See 93–C–518 Compl. at 6.) The 93–C–518 complaint alleged five distinct constitutional infirmities in Ordinance No. 93–1. (Id. at ¶¶ 501–505.) One of these constitutional violations was that "[t]he Town of Wayne's adult use zoning scheme is invalid on its face because the locational restrictions it contains effectively preclude adult uses at any geographical location in the township." (Id. at ¶ 503.)

On June 9, 1993, Special Souvenirs also moved for a preliminary injunction against the Town to prevent enforcement of Ordinance No. 93–1. This motion was withdrawn by stipulated agreement on August 26, 1993, "based on the absence of enforcement activity, but [subject to reinstatement] in the event that the defendant seeks to enforce the underlying ordinance." (93–C–518 Stip. and Order 8/28/93 at 1.)

On September 10, 1993, the Town filed a state court action against Special Souvenirs, Case No. 93–CV–579 in the Circuit Court for Washington County. The Town sought daily forfeitures for alleged violations of zoning and building codes and a temporary injunction, enjoining the bookstore from operation until the necessary violations were cured. (See R. 93–CV–579, Ex. 1 at 4.) Specifically, the Town alleged that Special Souvenirs had ignored a "stop work" order posted at their premises in May, and then proceeded to open without a valid zoning permit or certificate of occupancy and without a permit for certain plumbing work that had been performed.

On September 23, 1993, Special Souvenirs reinstated its motion for a preliminary injunction in the federal case 93–C–518,

---

**1.** *State of Wisconsin 1997–1998 Blue Book* 740 (1997).

arguing that the Town had commenced enforcement activity by pursuing a state court action aimed at closing the bookstore:

> The defendant township contends that its state court action is unrelated to the issues before this Court. However, two of the three grounds upon which the town seeks to proceed are that the plaintiff here failed to obtain a zoning permit, and that the plaintiff failed to obtain a certificate of occupancy. The plaintiff would not have been eligible for either of these permits under the Town of Wayne Zoning Code as it currently stands, because of the unconstitutional provisions in the code which are challenged in the plaintiff's motion for a preliminary injunction.

(Pl.'s Reinstated Mot. for Prelim. Inj. 9/23/93 at 1–2.)

On September 28, 1993, at a hearing before Circuit Court Judge Leo F. Schlaefer on the Town's motion for a temporary injunction in the state action, counsel for the Town stated in open court that the Town would not attempt to enforce Ordinance No. 93–1 against Special Souvenirs, should the bookstore apply for the necessary zoning and occupancy permits. (*See* R. 93–CV–579, Ex. 8 at 21–22.)

On October 21, 1993, the state circuit court granted the Town's motion for a temporary injunction in the state action and closed the bookstore. The court's decision was based on its finding that Special Souvenirs, in lacking the requisite three permits, had failed to comply with the Town's fundamental zoning and building ordinances, applicable to all commercial establishments. (*See id.*, Ex. 20.) Within three weeks of its closing, Special Souvenirs secured the outstanding plumbing permit.

On November 22, 1993, Special Souvenirs filed a motion to supplement its complaint in the federal action, 93–C–518.[2] The supplemental complaint alleged that

the permit requirements at issue in the state court action were unconstitutional as applied to persons whose activities are protected by the First and Fourteenth Amendments. Specifically, Special Souvenirs alleged that the absence of effective time limitations and prompt judicial review made the issuance of a zoning permit and a certificate of occupancy by the Town unconstitutional when applied to establishments such as the bookstore. (*See* 93–C–518 Supplemental Compl. at 5–6.) Special Souvenirs sought declaratory and injunctive relief to enjoin enforcement of the permit requirements and compensatory damages, including lost profits and earning capacity "due to closure of its business by the defendant Town of Wayne" via the state court action. (*Id.* at 6.)

In December 1993, the Town adopted a new adult zoning ordinance which repealed Ordinance No. 93–1 to the extent that the earlier ordinance was in conflict with the new one. It appears that around this time areas of the Town were properly zoned as "B–2" commercial districts, thereby eliminating the total geographic exclusion of adult-oriented establishments from the Town and correcting one of the constitutional deficiencies alleged by Special Souvenirs. (*See* 93–C–518 Olson Aff. 2/10/94, Ex. A.)

On February 24, 1994, Special Souvenirs recast and filed as a counterclaim in the state action the same allegations and claim for damages set forth in the federal supplemental complaint, described above. (*See* R. 93–CV–579, Ex. 37 at 5–12.)

By March 1994, both the Town and Special Souvenirs had filed dispositive motions in both the federal and state court actions. Meanwhile, Special Souvenirs' efforts to obtain all the permits needed in order for the state injunction to be lifted—this included the zoning permit, the certificate of occupancy, as well as a conditional use permit—stretched over the course of ten months, during which time the bookstore

---

**2.** This motion was ultimately granted by order of the magistrate judge on August 18, 1995.

remained closed. These efforts ultimately formed the basis for the second action filed in federal court. On October 27, 1994, when all the permits had been secured, the Washington County circuit court vacated its temporary injunction and allowed Special Souvenirs to reopen for business.

The state court, as it has throughout much of this litigation, beat the federal court to a decision on the parties' dispositive motions. In an oral decision on March 3, 1995, Judge Schlaefer granted the Town's motion for summary judgment in the state action, finding that there was no material dispute that Special Souvenirs had failed to comply with the applicable permit provisions before opening the bookstore. Special Souvenirs had argued the unconstitutionality of Ordinance No. 93–1 and the overall zoning scheme as an affirmative defense to noncompliance, and had pressed the more specific unconstitutionality of the code provisions governing zoning permits and certificates of occupancy— which were directly at issue in the Town's forfeiture claims—as a counterclaim. Judge Schlaefer addressed the constitutional arguments raised by Special Souvenirs in the following manner. As to Ordinance No. 93–1, the judge found that the ordinance was "not involved in the present action," as the action was about enforcing permit requirements applicable to all new businesses, and that therefore it could not "be made the basis for an issue which would then serve to defeat a motion for summary judgment." (R. 93–CV–579, Ex. 96 at 8.) As to the zoning ordinance and building code provisions at issue in the counterclaim, Judge Schlafer found that Special Souvenirs did not have standing to facially attack the constitutionality of these provisions because it had never attempted to apply for the required permits. (*Id.* at 9.) After granting summary judgment to the Town and expressly denying the counterclaim, the state court scheduled a hearing on appropriate fines and forfeitures to be levied against the bookstore.

On May 5, 1995, the third court action in this story entered the picture when Special Souvenirs filed a second civil rights case against the Town in federal court. Like 93–C–518 (as amended by the supplemental complaint), the second action, Case No. 95–C–488 in the Eastern District of Wisconsin, was filed pursuant to 42 U.S.C. § 1983 and sought declaratory and injunctive relief and compensatory damages, including lost profits and other legal costs associated with the year-long closing of its business and its efforts to comply with the Town's allegedly unlawful permit procedures. This time, however, Special Souvenirs took aim at the conditional use permit scheme that existed even before the enactment of Ordinance No. 93–1, and through which the bookstore eventually navigated after it was closed by the state court injunction.

The 95–C–488 complaint alleges that under the Town's zoning and building codes Special Souvenirs could not obtain a certificate of occupancy until it had a zoning permit, and could not obtain a zoning permit until it had a conditional use permit. The complaint further claims that the standards for granting or denying a conditional use permit are unconstitutional because they fail to limit decisionmaking discretion, they lack effective time limits, they do not provide for prompt judicial review, and because they impose burdensome conditions on business operations. (*See* 95–C–488 Compl. at 13–15.)

On June 7, 1995, Judge Schlaefer assessed forfeitures and costs of over $85,000 against Special Souvenirs in the state action. Judgment was entered in August 1995, and the bookstore promptly appealed.

Meanwhile, the federal court finally acted on the parties' dispostive motions in the first-filed action, 93–C–518. On August 18 and September 6, 1995, Magistrate Judge Patricia J. Gorence issued two Recommendations. The first recommended denying the Town's motion to dismiss 93–C–518, rejecting the proffered arguments based

on standing, mootness and ripeness. The second recommended granting Special Souvenirs' motion for summary judgment in the case, agreeing that Ordinance No. 93–1 was constitutionally invalid in a number of respects. However, Magistrate Judge Gorence determined that the locational restrictions imposed by No. 93–1— one of five alleged constitutional defects— had been mooted by the passage of Ordinance § 1.27, which eliminated the total geographic exclusion of adult-oriented establishments from the Town.

Ordinarily these Recommendations would have gone to a federal district judge for final resolution. However, the Town wanted to file another dispositive motion in 93–C–518 and an initial one in the new action, 95–C–488, arguing preclusion in both cases in light of the recent decision in state circuit court. The parties agreed to file a copy of the complete state court record in 93–CV–579 with the court in both federal cases, and to bring additional dispositive motions before the magistrate judge by the following January. The Town's motions for summary judgment in 93–C–518 and 95–C–488, based on preclusion, were timely filed on January 4, 1996. Briefing of the federal motions proceeded in tandem with briefing of Special Souvenirs' appeal in the state action, now before the Wisconsin Court of Appeals, District 2. Unsurprisingly, the parties and the magistrate judge ultimately agreed that it made good sensé to wait for the state court of appeals to render a decision, before addressing preclusion arguments based on the state circuit court decision. Cases 93–C–518 and 95–C–488 were stayed by the magistrate judge on August 30, 1996, pending a decision by the Wisconsin Court of Appeals.

The state court of appeals rendered a decision on April 16, 1997. *See Town of Wayne v. Bishop*, 210 Wis.2d 218, 565 N.W.2d 201 (Ct.App.1997). The lower court decision was affirmed in part, reversed in part and remanded to the circuit court. In significant part, the appellate court rejected the reasoning and determinations of Judge Schlaefer, described above. Specifically, the court of appeals concluded that the circuit court improperly considered the zoning and building occupancy violations in isolation from the substantive provisions of Ordinance No. 93–1. *Id.* at 231–32, 565 N.W.2d 201. Citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), the court held that the zoning scheme must be considered as a whole:

A party facing the Town's new ordinance could not be expected to differentiate between its substantive portions and its enforcement provisions.

In sum, we reject the Town's argument that it could rightfully enforce its zoning and building occupancy codes against the defendants regardless of any flaws in the substantive rules embodied in No. 93–1.

*Town of Wayne* at 231–32, 565 N.W.2d 201.

Citing the same reasoning, the court of appeals also held that Special Souvenirs had standing "to raise [its] substantive challenge to No. 93–1 as a defense to the zoning and building occupancy violations" and explicitly reversed the circuit court's finding that the bookstore did not have standing "to raise [its] First Amendment-related arguments" to facially attack the city's zoning scheme. *Id.* at 229–30, 565 N.W.2d 201.

As for the merits of the constitutional arguments, the court of appeals found Ordinance No. 93–1 to be unconstitutional under *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 70–72, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), because the Town "did not set aside any area where adult bookstores could lawfully operate and thereby manipulated its whole scheme of zoning and building occupancy codes to achieve an impermissible total ban on the distribution of adult-oriented, expressive materials." *Town of Wayne* at 232, 565 N.W.2d 201. The court of appeals expressly reversed "those portions of the judgment relating to

[Special Souvenirs'] violation of the Town's zoning and building occupancy codes." *Id.* The judgment related to the plumbing code violation was upheld, and the case was remanded to circuit court. *Id.* at 238, 565 N.W.2d 201. In June 1997, the state supreme court denied review.

On June 18, 1997, the federal cases were reopened at the parties' request for additional motions and briefing in light of the seemingly final state court decision. In September 1997, the Town renewed its motion for summary judgment based on preclusion in 93–C–518 and 95–C–488; Special Souvenirs also moved for summary judgment based on preclusion in 93–C–518 and for summary judgment on the merits in 95–C–488. Both cases were transferred to me when I came on the bench in January 1998, and all motions have been fully briefed for some time.

At some point in spring of 1998, Special Souvenirs filed a motion in circuit court, where the state action had been sitting on remand with little action since the court of appeals' reversal. The motion asked Judge Schlaefer "to reassume jurisdiction of the counterclaim and stay proceedings" pending resolution of related matters in the federal cases. (R. 93–CV–579, Tr. 6/15/98 at 3–4.) Special Souvenirs argued that, although the court of appeals did not directly address the trial court's dismissal of the counterclaim per se, the viability of the counterclaim was implicit in the reasoning and the holding of the higher court. Judge Schlaefer did not agree. He found that the counterclaim involved a separable legal issue and that the court of appeals neither reinstated the counterclaim nor reversed the circuit court's reasoning with respect to its dismissal. (*Id.* at 21–22; Order 6/25/98.) Special Souvenirs' motion was denied as there were no proceedings left to stay; the counterclaim remained dead, and judgment was entered again to that effect.

The bookstore appealed the circuit court judgment dismissing its counterclaim for a second time. There the matter sat for about a year, while both state and federal courts summoned the courage to address this procedural stew. On April 28, 1999, the court of appeals rendered its decision, remanding the state action once again to circuit court—this time with explicit instructions to reinstate the counterclaim.

## II. *YOUNGER* ABSTENTION

It is unusual and unfortunate that six years into this litigation the question of abstention from the exercise of federal jurisdiction should be an issue for serious consideration by the district court. The Town, the defendant in both federal actions, has never formally requested that I abstain from the exercise of federal jurisdiction pursuant to *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), although it has advanced numerous, less-convincing arguments challenging the existence of subject matter jurisdiction. Therefore, despite the Town's failure to raise what may have been its best argument to defeat federal jurisdiction, I cannot say that it has "expressly urged [this court] to proceed to an adjudication of the constitutional merits" and thereby waived this line of defense. *Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.,* 477 U.S. 619, 626, 106 S.Ct. 2718, 91 L.Ed.2d 512 (1986); *Barichello v. McDonald,* 98 F.3d 948, 953 (7th Cir.1996).

Like all the abstention doctrines, *Younger* abstention does not arise from a lack of jurisdiction in the district court, but from a complex of considerations about the role of federal courts vis-a-vis state institutions and from strong policies counseling against the exercise of federal jurisdiction when certain types of state proceedings may be impacted. *Barichello* at 953; *Ohio Civil Rights Comm'n* at 626, 106 S.Ct. 2718. Because *Younger* concerns the propriety of exercising subject matter jurisdiction, a federal court has some obligation to consider the issue *sua sponte* if circumstances clearly suggest that abstention may be appropriate. *See id.; Bellotti v. Baird,*

428 U.S. 132, 144 n. 10, 96 S.Ct. 2857, 49 L.Ed.2d 844 (1976).

Perhaps aware that abstention could be raised by the court, Special Souvenirs itself identified the *Younger* abstention issue and argued against it in a letter brief filed May 19, 1999. The Town has since filed a letter response urging something that sounds very much like abstention, although the Town continues to call it "preclusion"—quite a different legal animal, as we shall see. In any event, before addressing the parties' dispositive motions, I will put to rest any question of abstention.

■ Abstention from the exercise of federal jurisdiction should be the rare exception to a district court's obligation to adjudicate cases properly before it. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abdication of this responsibility is justified only in extraordinary circumstances where directing the parties to settle the dispute in state court would advance an important countervailing interest. *Id.* Various abstention doctrines have evolved from Supreme Court decisions identifying circumstances appropriate for abstention. The decision in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), established the broadest and most controversial of these doctrines.[3]

■ In *Younger*, a state criminal defendant filed a federal complaint alleging that the statute underlying his state prosecution violated the Constitution and asking that its enforcement be enjoined. In doing so, he attempted to escape the state system and reframe the issues on his own terms in federal court, converting what would ordinarily be a defense to criminal prosecution into an affirmative claim for relief. The Supreme Court held that, under these circumstances, the federal court should abstain from hearing the case, based on principles of equity, comity and federalism. *Younger*, 401 U.S. at 43–44, 91 S.Ct. 746. The *Younger* decision was very much grounded in the basic equity doctrine that courts should not enjoin ongoing criminal prosecutions when the moving party has an adequate remedy at law and will not suffer irreparable harm; and in the manifest importance of the states' role in the enforcement of criminal laws. *Id.*

The basic holding in *Younger* has been expanded greatly over the years, such that *Younger* abstention is now applicable (1) in situations involving civil enforcement proceedings in state court rather than criminal prosecutions, *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); (2) when the state proceedings commence *after* the filing of the federal complaint, as long as there have been no "proceedings of substance on the merits" in federal court, *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); (3) in cases pitting entirely private parties against one another, *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); (4) in light of pending state administrative proceedings, if those proceedings implicate important state interests, *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), afford the federal plaintiff the opportunity to litigate her federal claims, *Ohio Civil Rights Comm'n*, 477 U.S. 619, 106 S.Ct. 2718, 91 L.Ed.2d 512, and are judicial in nature, *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989); and (5) to federal claims for damages or non-equitable, discretionary relief, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 116 S.Ct. 1712, 1727–28, 135 L.Ed.2d 1 (1996).[4]

---

**3.** For a good summary of the debate surrounding *Younger* abstention doctrine, see Erwin Chemerinsky, *Federal Jurisdiction* 770–71 (1999). *See also* Martin H. Redish, *Absten-*tion, Separation of Powers, and the Limits of the Judicial Function*, 94 Yale L.J. 71 (1984).

**4.** Most of these decisions include vigorous dissents, decrying each expansion of the

■ Over time, a three-part test has emerged for determining whether a federal court is required to abstain under *Younger:* (1) the state proceedings must be judicial in nature and must be ongoing; (2) the proceedings must implicate important state interests; and (3) the proceedings must afford an adequate opportunity to raise constitutional challenges. *Trust & Inv. Advisers, Inc. v. Hogsett,* 43 F.3d 290, 295 (7th Cir.1994) (citing *Middlesex County,* 457 U.S. at 432, 102 S.Ct. 2515).

In the present case, the parallel Washington County action, 93–CV–579, is technically still ongoing, as the case was remanded for a second time only two months ago and there has been no final judgment. There is also no question that the state proceedings are judicial in nature and have provided a forum for Special Souvenirs to raise constitutional challenges to Town ordinances, both as affirmative defenses and as counterclaims. Special Souvenirs notes that the constitutional claims which form the basis for its second federal action, 95–C–488, did not accrue until some time after the initiation of the state court proceedings. Wisconsin statutes governing

amended and supplemental pleadings provide that a party may amend its pleading once as a matter of course at any time within six months after the complaint is filed. *See* Wis.Stat. § 802.09(1). The record indicates that Special Souvenirs filed its state counterclaims on February 24, 1994, pursuant to this rule. After six months a party may amend only by leave of the court or written consent of the adverse party. *Id.* Additionally, the court must give its permission for a party to file a "supplemental pleading setting forth transactions and occurrences or events which have happened since the date of the pleading sought to be supplemented." *See* Wis.Stat. § 802.09(4). The upshot is that Special Souvenirs' ability to raise the constitutional claims in its second federal action in the state proceedings continues to require the consent of the state trial court—a forum which has not been favorably disposed to Special Souvenirs throughout the history of this litigation. Thus, at least as to the second federal action, 95–C–488, the third part of the *Middlesex County* abstention test does not appear to be satisfied in that Special Souvenirs is unlikely to be able to raise those

*Younger* doctrine. In *Huffman,* the first case expanding the application of *Younger* abstention into the civil arena, the dissent notes that a civil action comes into existence with the mere filing of a complaint, unlike a criminal prosecution, theoretically safeguarded by preliminary steps like the arrest, charge and indictment. *See Huffman,* 420 U.S. at 615, 95 S.Ct. 1200 (Brennan, J., dissenting). In combination with *Hicks,* which permits abstention in cases where the federal lawsuit is filed before the parallel state action commences, *Younger* doctrine stands as "an open invitation to state officials to institute state proceedings in order to defeat federal jurisdiction." *Hicks,* 422 U.S. at 357, 95 S.Ct. 2281 (Stewart, J., dissenting). That invitation was extended to private parties, as well, in later cases expanding the application of *Younger* to private disputes. *See, e.g., Pennzoil,* 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1.

In *Huffman,* the Supreme Court carefully aligned the relevant civil enforcement proceedings—a public nuisance action based on a state statute prohibiting the exhibition of obscene films—with state criminal prosecutions, reasoning that "an offense to the State's

interest in the nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding." *Huffman,* 420 U.S. at 604, 95 S.Ct. 1200. Since *Huffman,* the question of "the State's interest" has gradually become the malleable center of the Court's *Younger* analysis. *See* Ann Althouse, *The Misguided Search for State Interest in Abstention Cases; Observations on the Occasion of Pennzoil v. Texaco,* 63 N.Y.U.L.Rev. 1051, 1075–1082 (1988).

As numerous writers have noted, *Pennzoil* represents the apogee of the state's interest analysis—or else renders it meaningless—because there the Court applied *Younger* to abstain from exercising federal jurisdiction in a dispute between purely private parties, although the state of Texas specifically disclaimed any interest in the outcome of the federal litigation.

It is a strange kind of analysis of state interest—one undertaken with protestations of deep respect for the state—that ignores the state's own opinion of its interest in the matter. One suspects that the state's interest is not truly the issue.
Althouse, *supra,* at 1062.

claims in the state proceedings, particularly at this late date.

Finally, on the question of whether these proceedings implicate important state interests, this court is constrained by the precedent of this circuit, which has required *Younger* abstention in cases involving ongoing state enforcement actions based on violations of adult use zoning ordinances—thus implicitly finding the existence of an

important state interest. *See Mannheim Video, Inc. v. County of Cook,* 884 F.2d 1043 (7th Cir.1989); *Ciotti v. County of Cook,* 712 F.2d 312 (7th Cir.1983).[5]

Under the *Middlesex County* test, then, abstention would appear to be appropriate in this case with respect to the first but not the second federal action. But this circuit has also identified two factors to consider before deciding to abstain when, as is the case here, the state proceedings

5. The power of municipalities to zone and control land use is an essential aspect of local government, subject to constitutional constraints but outside the general supervision of federal courts. *See Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 68, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981); *Ahrensfeld v. Stephens,* 528 F.2d 193, 198 n. 7 (7th Cir. 1975). While this is not a controversial proposition, the conclusion that zoning enforcement necessarily implicates important state interests is not so obvious. See, e.g., Eugene McQuillin, *The Law of Municipal Corporations* § 25.01 (3d ed. 1991): "Zoning of urban land has its main effect upon the rights of inhabitants of the municipality and is therefore a matter of local or municipal, rather than of state-wide concern."

As a general matter, Wisconsin statutes governing county, town, village and city government, see Wis.Stat.Chs. 59–66, create local governmental bodies, invest them with authority to perform various functions, and establish procedural rules to control their operation. The specific zoning authority of towns is derived from Wis.Stat. §§ 59.69, 60.61 and 60.62, and arguably flows from county not state prerogatives. The distinction between the purely local concerns addressed by municipal zoning laws and the broader, state interests reflected in statutory procedural rules has been noted by Wisconsin courts. *See, e.g., Gloudeman v. City of St. Francis,* 143 Wis.2d 780, 789–90, 422 N.W.2d 864 (Ct.App. 1988) (whereas a city zoning ordinance is a largely a matter of local concern, state notice and hearing provisions guard due process rights and are "primarily of statewide concern").

When applying the *Younger* doctrine, a federal court "inquiring into the substantiality of the State's interest in its proceedings [should] not look narrowly to its interest in the *outcome* of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome," but should look to "the importance of the generic proceedings to the State." *New Orleans Pub. Serv.,* 491

U.S. at 365, 109 S.Ct. 2506. Uniformly, decisions applying *Younger* in the context of civil enforcement actions based on local zoning ordinances (and not, by contrast, a state public nuisance statute as in *Huffman*) assume without comment or justification that such proceedings raise important state concerns. In addition to *Ciotti* and *Mannheim Video,* see also *Woodfeathers, Inc. v. Washington County,* 180 F.3d 1017, 1020-21 (9th Cir.1999); *Wandyful Stadium, Inc. v. Town of Hempstead,* 959 F.Supp. 585, 590 (E.D.N.Y.1997); and *Sendlewski v. Town of Southampton,* 734 F.Supp. 586, 591 (E.D.N.Y.1990). Many of these cases cite *World Famous Drinking Emporium, Inc. v. City of Tempe,* 820 F.2d 1079 (9th Cir.1987), which simply labeled the enforcement of a municipal zoning ordinance in civil court as "akin to a criminal prosecution." *Id.* at 1083.

The analogy to criminal prosecutions in this context elides an important distinction: the enforcement of local zoning laws is perhaps quasi-criminal in the sense that *Huffman* affirms, but the purpose of such enforcement is to vindicate *local* not state interests. In this case, for example, the Town's own zoning ordinance sets up a uniform citation method to enforce ordinance violations, empowers the Town attorney to bring actions to enjoin violations, and establishes daily forfeitures and other costs. *See* Town of Wayne, Wis., Zoning Ordinance § 1.07 (1994). Section 66.12, Wis.Stat., on the other hand, merely provides that an action for violation of a municipal ordinance is a civil action and may be brought in state court. In effect, the Town's Washington County action against Special Souvenirs was a local "prosecution" that occurred, by necessity, in a state forum.

Finally, I note that zoning is not only a distinct feature of local as opposed to state government, but a jealously guarded one. The assertion that Wisconsin has any interest in local zoning enforcement would no doubt be vigorously disputed by the leadership of the towns, villages and cities of this state.

follow the initiation of the federal suit. First, the court should consider whether the federal plaintiff will nevertheless have an adequate opportunity to raise its constitutional challenges in the state proceedings. *Mannheim Video,* 884 F.2d at 1044–45 (citing *Middlesex County,* 457 U.S. at 432, 102 S.Ct. 2515). Second, the district judge must consider the progress of the federal action, dismissing it in favor of the state action only if there have been no "proceedings of substance on the merits" in federal court. *Id.* at 1045 (citing *Hicks,* 422 U.S. at 349, 95 S.Ct. 2281).

The first factor reproduces the third *Middlesex County* criterion discussed above and tends to weigh in favor of abstention, at least as to the first federal action. The second factor, however, persuades this court to keep both cases. Special Souvenirs filed its first federal action, 93–C–518, on May 24, 1993. It is certainly arguable that by the time the Town filed its enforcement action in state court on September 10, 1993, no proceedings of substance on the merits had occurred in the federal forum. The language of *Hicks,* which first expanded *Younger* into situations involving a later-filed state suit, suggests that what is crucial is the progress of the federal case at the moment the state proceedings commence. *See Hicks,* 422 U.S. at 349, 95 S.Ct. 2281. In the case of *Hicks,* for example, the state's criminal prosecution of the federal plaintiff began the day after the federal complaint was served and before any proceedings whatsoever transpired in federal court. As the Seventh Circuit has noted, "application of the *Younger* doctrine does not depend on who gets to which courthouse first." *National Metalcrafters v. McNeil,* 784 F.2d 817, 822 (7th Cir.1986).

On the other hand, cases applying *Hicks* do not involve situations such as the one here, in which abstention under *Younger* may have been appropriate at the time the state action was filed or soon after, but appears greatly inappropriate now that the

applicability of the doctrine has finally been raised.

For example, in *Ciotti* the operators of an adult bookstore in Cook County, Illinois, filed suit in federal court to challenge the constitutionality of the county's adult use zoning ordinance. *Ciotti,* 712 F.2d at 313. After the district court denied a motion by the county to dismiss the federal action for lack of a case or controversy, the county filed an enforcement action against the adult bookstore in state court, seeking the imposition of fines for illegal operation and an injunction closing the bookstore. *Id.* Soon after filing the state action, the county again moved to dismiss the federal case, this time arguing that the federal court should abstain under *Younger.* *Id.* The Seventh Circuit affirmed the decision to abstain:

> The district court's decision that plaintiffs presented a case or controversy went to the issue of plaintiffs' standing, but it was not a decision relating to the merits of the underlying issue in the case—the constitutionality of the ordinance. The standing decision, therefore, was not a proceeding of substance on the merits.
>
> Apart from the lower court's decision on standing, the record indicates no other proceedings—for instance, depositions taken, discovery completed, or briefs filed on the issues—that would suggest advancement toward a determination on the merits. The federal proceeding was still in an embryonic stage.

*Id.* at 314 (internal citations and quotation marks omitted).

Similarly in *Mannheim Video,* operators of a video arcade brought suit in federal court challenging the constitutionality of a Cook County adult use zoning ordinance. *Mannheim Video,* 884 F.2d at 1043–44. At the time the federal suit was initiated, the federal plaintiffs had been defending an enforcement action in state court based on various infractions of county building ordinances for over a year. *Id.* The county responded to the federal complaint by

moving to dismiss each of its three counts pursuant to Fed.R.Civ.P. 12(b)(6). The district judge denied the motion to dismiss as to the first count, dismissed the second count on the merits, and stayed the third count pending a decision by the Supreme Court in a closely related case. *Id.* at 1044. After the Supreme Court decision summarily affirmed the constitutionality of certain parts of the county's adult use zoning ordinance, the county amended its state complaint to include allegations of violations of the zoning ordinance at issue in the federal case. The video arcade then filed a counterclaim in state court, raising constitutional arguments similar to its surviving federal claims. *Id.* Upon learning that the state action now included the remaining federal claims, the district judge *sua sponte* dismissed the federal case under *Younger* abstention doctrine. *Id.* The Seventh Circuit affirmed, expressly rejecting the argument that a decision on a Rule 12(b)(6) motion to dismiss somehow proceeds farther toward a determination of the merits than a decision on the existence of standing, as in *Ciotti*: "[B]oth motions demand that the court determine whether a live case exists, a controversy that the judiciary can remedy.... Neither analysis casts any light or carries *res judicata* effects on the merits of a cognizable claim, here the first count." *Id.* at 1046 n. 4.

In both *Ciotti* and *Mannheim Video*, the *Younger* abstention argument was brought to the attention of the federal court soon after its application became arguably justified. In my view, the present case presents a more extreme example of the situation in *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984), the only Supreme Court case elaborating on *Hicks'* notion of "proceedings of substance on the merits." *Hicks*, 422 U.S. at 349, 95 S.Ct. 2281. In *Hawaii Hous. Auth.*, the related state proceedings began seven months after the filing of the federal complaint and after the federal plaintiffs' motion for a preliminary injunction had been granted in federal court and the parties had begun filing summary judgment motions. *Id.* at 238, 104 S.Ct. 2321. There, the Supreme Court found that "[a] federal court action in which a preliminary injunction is granted has proceeded well beyond the embryonic stage, and considerations of economy, equity, and federalism counsel against *Younger* abstention at that point." *Id.* (internal citations and quotation marks omitted).

As in *Hawaii Hous. Auth.*, proceedings in both federal actions before me have proceeded well beyond the embryonic stage, despite the fact that no substantive orders have been issued by the district court. I find it significant that Special Souvenirs motion for a preliminary injunction, which in theory should have resulted in an expedient ruling on the merits, was at first withdrawn based on the Town's assurances that it would not try to enforce Ordinance No. 93–1, was then reinstated after the state enforcement action was filed, and then was ultimately denied as moot long after the ordinance was arguably repealed. More importantly, though, over the past six years the parties have engaged in numerous rounds of briefing, including briefing on the merits of Special Souvenirs' constitutional claims against the Town; numerous settlement discussions and status conferences before two magistrate judges and two district judges; and an oral argument before this court. Magistrate Judge Gorence produced two Recommendations to the district court, one of which recommended granting Special Souvenirs' motion for summary judgment in the first federal action because Ordinance No. 93–1 was facially unconstitutional in several respects. This recommendation alone represents a substantial advancement toward a determination of the merits, since I am obligated to address de novo only those portions of the recommendation that are specifically objected to. *See* 28 U.S.C. § 636(b)(1). Under these circumstances and at this late date, *Younger* abstention is entirely inappropriate. *See RTC Commercial Assets Trust 1995–NP3–1 v. Phoenix Bond & Indem. Co.*, 169 F.3d

448, 452 (7th Cir.1999) (". . . it is now too late in the day to consider whether [*Younger* abstention] might have been an appropriate ground for dismissal of the federal action . . .").

In addition, the fact that the second federal action cannot be dismissed pursuant to *Younger* counsels strenuously against abstention in the first action. These cases and particularly the potential assessment of damages in the two actions are too closely intertwined to make separate adjudication in state and federal courts a practical alternative. *See Colorado River,* 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (factors such as convenience and conservation of resources may be considered in considering abstention).

As a final point, I note that the original impetus for the *Younger* doctrine—federal respect for the independent functioning of state criminal, or quasi-criminal proceedings—is no longer an issue in this litigation. The "enforcement" aspect of the state action ended long ago, and Special Souvenirs' operation today is not cited as unlawful. The only issues that remain are in fact the issues that Special Souvenirs originally brought to federal court. Having waited out the shifting tides of this litigation, Special Souvenirs is entitled to have those claims heard in a federal forum.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[M]aterial" facts are those facts which, under the relevant substantive law, "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91

L.Ed.2d 202 (1986). A dispute over such material facts is "genuine" if the evidence is such that a reasonable trier of fact could find in favor of the non-moving party. *Id.* Thus, a genuine issue of material fact does not exist unless "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

The moving party bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *see Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Celotex* at 323, 106 S.Ct. 2548. If this burden is met, the non-moving party must then present specific evidence showing that a material factual dispute exists, precluding summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In weighing a summary judgment motion, I must construe evidence in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson* at 255, 106 S.Ct. 2505.

### IV. ANALYSIS OF 93–C–518 MOTIONS

#### A. Town of Wayne's Dispositive Motions

The Town has filed three dispositive motions in the six years that 93–C–518 has been pending in federal court, none of which has been subject to a final ruling by a district judge. The earliest dispositive motion, a motion to dismiss filed December 15, 1993, was previously considered by Magistrate Judge Gorence, who recommended denying the motion. In her August 18, 1995 recommendation, the magistrate judge rejected the Town's arguments for dismissal based on standing, mootness and ripeness. The recommendation was never adopted by a district judge, and the Town has continued to raise these jurisdictional arguments at every stage of this litigation. Therefore, the following discus-

sion of these issues, as raised in the Town's most recent briefing on its renewed motion for summary judgment, incorporates the reasoning of the magistrate judge and addresses earlier objections filed and arguments made by the Town.

### 1. Standing

The Town has argued from the outset that Special Souvenirs lacks standing to challenge the constitutionality of Ordinance No. 93–1 because the Town never enforced the ordinance and has consistently maintained it would not seek enforcement.

Both the magistrate judge and the court of appeals have thoroughly discussed the question of Special Souvenirs' standing to mount a facial challenge to the validity of Ordinance No. 93–1. *See Town of Wayne,* 210 Wis.2d at 227–30, 565 N.W.2d 201. (*See also* Recomm. 8/18/95 at 9–10, 12–13.) The Town's objections to the recommendation and its most recent briefing on the subject present no new arguments in support of its theory that Special Souvenirs lacks standing. (*See* Town's Objs. 8/28/95; Town's Brf. in Supp. of Renewed Mot. for Summ.J. at 7–8.) Therefore, both because I choose to adopt the findings of the magistrate judge and because I am bound by the principles of issue preclusion (to be discussed later in this opinion), the Town's argument that Special Souvenirs lacks standing to bring the claims in 93–C–518 fails.

### 2. Ripeness

■ The Town argues that this court has no subject matter jurisdiction over this case because the issues raised by Special Souvenirs in connection with Ordinance No. 93–1 have never been ripe for judicial review because the ordinance has never been enforced. The basic rationale for the ripeness doctrine is to prevent courts from entangling themselves in abstract arguments before a concrete injury has been felt. *See Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). A ripeness analysis usually requires courts to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 149, 87 S.Ct. 1507.

■ The magistrate judge's recommendation rejected the Town's defense based on ripeness, and the objections filed by the Town raised no new arguments. (See Recomm. 8/18/95 at 12–14; Objs. 8/28/95.) In its most recent briefing on this issue, however, the Town cites *Shelter Creek Dev. Corp. v. City of Oxnard,* 838 F.2d 375 (9th Cir.1988).

In *Shelter Creek,* owner/developers of an apartment complex who planned to convert the property into stock cooperatives challenged the constitutionality of a city zoning ordinance requiring them to comply with building and parking restrictions applicable to new residential condominiums. 838 F.2d at 376. It was not economically feasible or physically possible for the apartment complex to comply with the all the restrictions. However, although the zoning ordinance provided for the issuance of special use permits, the owner/developers never applied for such a permit or requested a variance from the city. Instead, they instituted an action in federal court under 42 U.S.C. § 1983, claiming that the restrictions on conversion were not rationally related to legitimate governmental purposes and therefore deprived them of a property interest without due process of law. *Id.* at 377.

The Ninth Circuit concluded that the plaintiffs' argument was not ripe for judicial resolution, relying on a line of Supreme Court precedent that holds that

whether an ordinance is challenged as a taking for which just compensation must be paid under the fifth amendment or as an invalid exercise of police power under the fourteenth amendment, the courts are in no position to assess the constitutionality of the ordinance "until a final decision is made as to how the regula-

tions will be applied to [the landowner's] property."

*Shelter Creek*, 838 F.2d at 377–78 (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 200, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)).

In *Shelter Creek*, the plaintiffs argued that the ordinance in question was unconstitutional as applied to them,[6] although they had given the city no opportunity to reach an authoritative determination as to how the ordinance would actually be applied to their situation. *Id.* at 379–80, 838 F.2d 375. As Special Souvenirs notes, the bookstore's claims in this action differ in significant ways. First, the complaint in 93–C–518 clearly puts at issue the facial validity of Ordinance No. 93–1. Unlike a challenge to a law "as applied," a facial challenge "does not depend on the extent to which petitioners are deprived of the economic use of their particular pieces of property or the extent to which these particular petitioners are compensated." *Yee v. City of Escondido*, 503 U.S. 519, 534, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992). Further, unlike the building and parking restrictions at issue in *Shelter Creek*, Ordinance No. 93–1 potentially chills First Amendment freedoms. It is well-established that in the First Amendment context ripeness requirements are less strictly construed because even the threat of enforcement does immediate and real injury by altering a plaintiff's conduct or expression. *See Planned Parenthood Ass'n of Chicago Area v. Kempiners*, 700 F.2d 1115, 1122 (7th Cir.1983); *Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

The Town's assertion that Ordinance No. 93–1 was never enforced and that Special Souvenirs should have known the ordinance would not be enforced is a remarkable claim, particularly in light of the Town's aggressive forfeiture action against the bookstore in state court. Special Sou-

venirs perceived the filing of the state court action as precisely the sort of "enforcement" it sought to preempt by filing 93–C–518. (See Pl.'s Reinstated Mot. for Prelim. Inj. 9/23/93 at 1–2.) Moreover, the decision of the Wisconsin Court of Appeals rejecting the Town's theory that enforcement of Ordinance No. 93–1 could be separated from other permit requirements suggests, if nothing else, that Special Souvenirs' perception was a reasonable one.

In sum, Ordinance No. 93–1 presented at least a potential threat to Special Souvenirs' freedom of expressive activity from the day the ordinance appeared on the books, and facial challenges to its constitutionality have been ripe for judicial review from that moment.

### 3. Mootness

■ The Town argues that 93–C–518 is moot because the Wisconsin Court of Appeals already ruled that Ordinance No. 93–1 is unconstitutional and because the ordinance itself was repealed in December 1993.

As to the "repeal" of Ordinance No. 93–1, Special Souvenirs vigorously disputes the practical effect of the repeal, accomplished through the adoption of Ordinance § 1.27. Moreover, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice," under the rationale that the defendant could easily return to old tricks once the coast is clear. *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982). This logic encompasses situations involving the repeal of laws alleged to be unconstitutional. *Id.* Although public officials' acts of self-correction will be credited if the acts appear genuine, there must be no possibility that the unconstitutional effects will continue to be felt. *Magnuson*

---

6. On appeal, the *Shelter Creek* plaintiffs abandoned their argument that the ordinance was unconstitutional on its face, so the Ninth Circuit expressly declined to consider ripeness in relation to a challenge based on facial validity. *See Shelter Creek*, 838 F.2d at 377 n. 2.

*v. City of Hickory Hills,* 933 F.2d 562, 565 (7th Cir.1991). The heavy burden of demonstrating mootness is on the defendant. *Kikumura v. Turner,* 28 F.3d 592, 597 (7th Cir.1994). The Town has not met its burden here, especially given that Special Souvenirs does not concede the unequivocal repeal of the ordinance.

As to the decision of the Wisconsin Court of Appeals, the fact that Ordinance No. 93–1 has been declared unconstitutional may be entitled to issue preclusive effect, but that does not render this action moot. Case No. 93–C–518 is a civil action brought pursuant to 42 U.S.C. § 1983 in order to obtain damages, attorneys' fees and declaratory and injunctive relief to prevent the enforcement of Ordinance No. 93–1. While the necessity of equitable relief may be contested in light of the repeal of the ordinance, the question of compensatory damages owed to Special Souvenirs has not yet been adjudicated by any court.

The Town argues that, in any event, Special Souvenirs is not entitled to monetary damages based on Ordinance No. 93–1 because such damages would inevitably be based on the forced closure of the bookstore under the state court's temporary injunction. Special Souvenirs counters that it seeks recovery in this action under federal common law allowing § 1983 plaintiffs to be compensated for injuries proximately caused by the deprivation of constitutional rights. *See generally Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). Special Souvenirs would thus have me view the Town's pursuit of an injunction in state court and its ultimate success in obtaining one as part of the "enforcement" of an unconstitutional zoning scheme—of which the linchpin was Ordinance No. 93–1. The Town, on the other hand, objects to the recovery in federal court of damages arising out of a "wrongfully issued" state court injunction, when Wisconsin has its own rules governing such compensation in the absence of a security bond. *See* Wis.Stat. § 813.06;

*Jordan–Jefferson, Inc. v. Scheer,* 16 Wis.2d 288, 114 N.W.2d 408 (1962); *Laundry, Dry Cleaning, Dye House Workers Union, Local 3008, AFL—CIO v. Laundry Workers Union Int'l,* 4 Wis.2d 542, 556–57, 91 N.W.2d 320 (1958).

The potential appropriateness and/or extent of compensatory damages in 93–C–518 remains unclear at this point for both legal and factual reasons. But certainly the issue is a live one, regardless of the court of appeals' conclusion about the validity of Ordinance No. 93–1. Since Special Souvenirs has a "concrete interest" in its claim for damages, this action is not moot. *Ellis v. Brotherhood of Ry., Airline & S.S. Clerks,* 466 U.S. 435, 442, 104 S.Ct. 1883, 80 L.Ed.2d 428 (1984).

### 4. Claim Preclusion

The Town argues that all Special Souvenirs' claims in 93–C–518 are barred by claim preclusion arising out of the state action and counterclaim.

Under the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, and its implementing statute 28 U.S.C. § 1738, a federal court must afford a state court judgment "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Thus, Wisconsin law governs my assessment of the claim preclusive effect of the decisions rendered in 93–CV–579, the parallel Washington County state action. *Starzenski v. City of Elkhart,* 87 F.3d 872, 877 (7th Cir.1996).

In Wisconsin, "a final judgment is conclusive in all subsequent actions between the same parties [or their privies] as to all matters which were litigated or which might have been litigated in the former proceedings." *Northern States Power Co. v. Bugher,* 189 Wis.2d 541, 550, 525 N.W.2d 723 (1995). The following factors must be present in order for prior

proceedings to bar a subsequent claim: (1) an identity between the parties or their privies in the prior and subsequent suits; (2) an identity between the causes of action in the two suits; and (3) a final judgment on the merits in a court of competent jurisdiction. *Id.* at 551, 525 N.W.2d 723. The state proceedings here satisfy both the first and second factors. *See id.* at 553–54, 525 N.W.2d 723 (discussing transactional approach to determining identity between causes of action).

■ Claim preclusion, however, is not appropriate in this instance because the third factor is not present—there has been no final judgment on the merits in the state action. Case No. 93–CV–579 is currently on remand to the circuit court of Washington County. The circuit court had initially dismissed Special Souvenirs' counterclaim without reaching the merits of the First Amendment-related arguments because the court concluded that the bookstore did not have standing to challenge the code provisions governing zoning permits and certificates of occupancy, since the store had never applied for those permits. Among other determinations, the court of appeals rejected the conclusion that Special Souvenirs lacked standing to bring its counterclaim, and the case was remanded. Notwithstanding the clear (if not explicit) mandate of the higher court, the circuit court then dismissed the counterclaim a second time, still declining to address Special Souvenirs' constitutional claims. On April 28, 1999, the court of appeals remanded again, this time with clear instructions to reinstate the counterclaim and consider the merits of the First Amendment arguments. Thus, the most recent decision in 93–CV–579 bears none of the hallmarks of a "final judgment on the merits" for the purposes of claim preclusion, or res judicata.

> [W]hen res judicata is in question a judgment will ordinarily be considered final in respect to a claim ... if it is not tentative, provisional, or contingent and represents the completion of all steps in the adjudication of the claim by the court, short of any steps by way of execution or enforcement that may be consequent upon the particular kind of adjudication. Finality will be lacking if an issue of law or fact essential to the adjudication of the claim has been reserved for future determination, or if the court has decided that the plaintiff should have relief against the defendant of the claim but the amount of the damages, or the form or scope of other relief, remains to be determined.

Restatement (Second) of Judgments § 13 cmt. b (1982). Given the current posture of the state case, it is beyond dispute that there exists no final judgment on the merits, and certainly not with respect to Special Souvenirs' counterclaims.

The Town cites two Seventh Circuit cases in support of its claim preclusion argument. Both are distinguishable because a final judgment was rendered in each case. *See Stericycle, Inc. v. City of Delavan,* 120 F.3d 657, 658 (7th Cir.1997) (federal defendants previously sued by federal plaintiffs in state court on related matter successfully argued claim preclusion based on indisputably final state judgment); *Pliska v. City of Stevens Point,* 823 F.2d 1168, 1173 (7th Cir.1987) ("it is undisputed that the parties here are the same as the parties in the state court proceedings and that final judgments on the merits were entered by the state courts."). The present situation is factually similar to *Gosnell v. City of Troy,* 59 F.3d 654 (7th Cir.1995), in which the Seventh Circuit rejected the city's argument for claim preclusion because the related state court proceedings were technically ongoing, still lingering on the trial court docket after remand: "For our purposes, what matters is that a remand deprives the judgment of preclusive effect until a new final judgment has been entered." [7] *Id.* at 657.

---

7. I note that the *Gosnell* court also rejected the application of issue preclusion because none of the parties could remember the state proceedings well enough to identify what is-

Here, as in *Gosnell,* there is no final state judgment to satisfy claim preclusion requirements.

Based on the foregoing discussion, each of the Town's dispositive arguments fails, and its renewed motion for summary judgment in 93–C–518 is hereby denied. Earlier dispositive motions filed by the Town in this action are officially mooted by this order.

### B. Special Souvenirs' Dispositive Motions

On September 17, 1997, several months after the Wisconsin Court of Appeals issued its first decision in the state action, Special Souvenirs moved for partial summary judgment based on issue preclusion. Special Souvenirs argues that this court is bound by issue preclusion to accept the court of appeals' determinations that Ordinance No. 93–1 was an unconstitutional locational restriction on First Amendment expression and that the ordinance was inextricably tied to enforcement of the Town's entire zoning scheme, "render[ing] the Town's zoning and occupancy provisions as a whole unconstitutional as applied to this plaintiff." (Pl.'s Br. in Supp. of Summ. J. Mot. in 93–C–518 at 2.) The court agrees that issue preclusion is applicable here.

The doctrine of issue preclusion prevents relitigation of an issue of fact or law previously determined by a valid final judgment in an action between the same parties. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Heggy v. Grutzner,* 156 Wis.2d 186, 192, 456 N.W.2d 845 (Ct.App.1990). Again, in assessing the applicability of the doctrine, federal courts look to the law of the state whose judgment is being given issue preclusive effect. *Migra,* 465 U.S. at 81, 104 S.Ct. 892. Wisconsin courts cite the Restatement (Second) of Judgments §§ 27 and 28 as authority on the general rule of issue preclusion and exceptions to that

sues remained for decision. *Gosnell,* 59 F.3d

rule. *See, e.g., Michelle T. v. Crozier,* 173 Wis.2d 681, 495 N.W.2d 327 (1993). The Restatement frames the general rule as follows:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (1982). The rule itself suggests at least three implicit limitations on the issue preclusion doctrine: (1) that the issue in question was "actually litigated" in the first proceeding; (2) that the issue was decided by "a valid and final judgment"; and (3) that determination of the issue was "essential to the judgment."

The issues relevant to the federal cases that were "actually litigated" in the state action are, as this court sees it, (1) the unconstitutionality of Ordinance No. 93–1 based on its total geographic exclusion of adult-oriented establishments; (2) the indivisibility of the Town's overall zoning scheme for enforcement purposes; and (3) Special Souvenirs' standing to raise its constitutional challenges to various zoning provisions. All these issues were briefed and argued by the parties and were essential to the court of appeals' ultimate decision to reverse the lower court's finding that the bookstore had violated the zoning and occupancy codes, notwithstanding the effect of having Ordinance No. 93–1 on the books, however briefly. *See Town of Wayne,* 210 Wis.2d 218, 565 N.W.2d 201 (1997).

Further, for the purposes of issue preclusion, the state court of appeals' determination on these issues is "sufficiently firm to be accorded conclusive effect." Restatement (Second) of Judgments § 13 (1982). There is no inconsistency between the finding that the state proceedings do not present a final judgment on the merits

at 657.

for the purposes of claim preclusion, as discussed in the previous section, but do support the more limited application of issue preclusion. *See id.* at § 13 cmt. g; § 27 cmt. k. The simultaneous state and federal proceedings between these parties represent the unusual situation when "litigation may have reached a stage at which issue preclusion is appropriate even though claim preclusion—application of the rules of merger and bar—is not." *Id.* at § 27 cmt. k. The parties were "fully heard" in state court, and the court of appeals' decision was "adequately deliberated and firm" and supported by a "reasoned opinion." *Id.* at § 13 cmt. g. Review has already been denied by the Wisconsin Supreme Court. For all practical purposes, the state conclusions with respect to these issues are final, and I see no reason not to apply issue preclusion doctrine in this instance. *See also Michelle T.,* 173 Wis.2d at 687–89, 495 N.W.2d 327 (discussing factors to consider in deciding whether to invoke issue preclusion); *Precision Erecting, Inc. v. M & I Marshall & Ilsley Bank,* 224 Wis.2d 288, 304, 592 N.W.2d 5 (Ct. App.1998) ("Whether issue preclusion should bar litigation in a particular situation is a decision that must be made on considerations of fundamental fairness.")

The Town's only response to Special Souvenirs' argument for issue preclusion in 93–C–518 is that the entire action is barred by the doctrine of claim preclusion. This argument fails for reasons discussed in the previous section.

The requirements for issue preclusion are therefore satisfied, although the scope of preclusion is limited to those matters actually discussed and determined by the court of appeals, as identified above. *See Froebel v. Meyer,* 13 F.Supp.2d 843, 862 (E.D.Wis.1998). Accordingly, Special Souvenirs is entitled to summary judgment on ¶ 503 of its complaint in 93–C–518, which alleges that: "The Town of Wayne's adult use zoning scheme is invalid on its face because the locational restrictions it contains effectively preclude adult uses at any

geographical location in the township." As set forth in the complaint, ¶ 503 is one of five alternate bases for finding Ordinance No. 93–1 unconstitutional. It appears, therefore, that Special Souvenirs has established liability with respect to Ordinance No. 93–1 in its first federal action; left for determination is the question of damages.

However, to the extent that the calculation of damages is affected, I note the following: although Special Souvenirs is entitled to the conclusion reached by the state court that the bookstore's zoning and occupancy violations may not be *enforced* in isolation from the overall zoning scheme—rendered unconstitutional by Ordinance No. 93–1—this conclusion does not translate into a preclusive finding that the zoning and building occupancy code provisions *themselves* are unconstitutional for the reasons set forth in the state counterclaims and the supplemental complaint in 93–C–518.

Based on the foregoing discussion, Special Souvenirs' motion for partial summary judgment in 93–C–518 is hereby granted. Special Souvenirs' earlier motion for summary judgment in this action, the subject of the magistrate judge recommendation dated September 6, 1995, is officially mooted by this order.

## V. FACTS PERTAINING TO CONDITIONAL USE PERMIT CLAIMS

Special Souvenirs closed pursuant to the state court's temporary injunction on October 21, 1993. Since the court's decision was based on its finding that Special Souvenirs lacked three permits required of all commercial establishments under the Town's zoning and building codes—a zoning permit, a certificate of occupancy and a plumbing permit—the bookstore set out to acquire the necessary permits. Within three weeks, the plumbing permit had been secured.

On December 17, 1993, Special Souvenirs applied for a zoning permit. Special Souvenirs' manager, Mark Phillips, had two meetings with Town zoning administrator Orville Kern that December. Kern told Phillips that Special Souvenirs would need to obtain a conditional use permit before Kern could issue a zoning permit to the bookstore. Kern also told Phillips that Special Souvenirs could either appeal from that determination or apply for a conditional use permit; Phillips was given forms for both.

Phillips then telephoned Town building inspector Gordon Hoffman to arrange for an inspection in order to obtain a certificate of occupancy. Hoffman told Phillips that he could not inspect the bookstore for the purpose of issuing a certificate of occupancy until Kern had issued a zoning permit. Kern confirmed Hoffman's understanding that a zoning permit had to be issued first. Thus, it appears that Special Souvenirs could not obtain a certificate of occupancy until it had a zoning permit, and could not obtain a zoning permit until it had a conditional use permit.

In April 1994 Special Souvenirs applied for a conditional use permit under an agreement with the Town Board that its application would be construed as an application for all necessary permits and licenses, including a zoning permit, certificate of occupancy and an adult entertainment license. After receiving the bookstore's application, the Town Board scheduled a public hearing before its Plan Commission

on May 23, 1994. A number of Town residents spoke at this public hearing. Following the hearing, the Plan Commission met again on June 15, 1994, to consider the hearing testimony and to formulate a recommendation to the Town Board.

On June 17, 1994, a draft conditional use permit for the bookstore was disseminated to all interested parties. At this time the Town also requested additional information from Special Souvenirs, claiming the information was required by Town ordinances governing the issuance of conditional use permits. Special Souvenirs submitted the requested information. On August 29, 1994, after further review and processing of the application materials, the Town made a second request for additional information. Again, Special Souvenirs submitted the requested information.

Finally on September 21, 1994, the Town Board issued Special Souvenirs a conditional use permit and directed the zoning administrator to issue zoning and occupancy permits following final inspections of the bookstore. After the inspections were conducted, certain physical modifications were made to the premises as required by the Town Board, and the remaining permits were issued. On October 27, 1994, the state circuit court vacated its temporary injunction, allowing Special Souvenirs to reopen for business.

The Town ordinances set forth below govern the conditional use permit process, as applicable to Special Souvenirs.[8] The

---

8. In December 1993, the Town adopted a new ordinance to regulate adult-oriented establishments, Ordinance § 1.27. The new ordinance provides that "[a]ny other Ordinances whose terms are in conflict with the provisions of this Ordinance are hereby repealed as to those terms that conflict." (95–C–488 Phillips Aff. 9/15/97, Ex. D at 4.) The Town maintains that Ordinance § 1.27 effectively repeals Ordinance No. 93–1, the target of Special Souvenirs' first federal action.

Among other things, Ordinance No. 93–1 had set forth eight additional provisions to govern the granting of conditional use permits. (See Id., Ex. A at 4–6.) Ordinance § 1.27, while retaining the conditional use

permit requirement for adult-oriented businesses, merely provides that "such establishments shall comply with all regulations and requirements of this Zoning Code and must comply with all provisions of the zoning district in which the establishment is located." (Id., Ex. D at 3.) Therefore, it is certainly arguable that the more specific conditional use permit scheme set forth in Ordinance No. 93–1 is not in *conflict* with § 1.27 and thereby repealed, but simply constitutes part of the universe of "regulations and requirements" which remain applicable to adult-oriented businesses after the passage of the new ordinance.

Town zoning ordinance includes as an allowable conditional use:

> (v) Commercial establishments selling, leasing or otherwise dealing in books, magazines, other published materials, films, pictures, amusement machines and devices and/or other paraphernalia depicting sexual conduct in a Commercial B–2 District.

Town of Wayne, Wis., Zoning Ordinance § 1.26(3)(v) (1994). Conditional uses are permitted in specified districts after review, public hearing and approval by the Town Board, in accordance with the ordinance. *Id.* at § 1.06(3).

Procedures and standards for issuing conditional use permits are set forth in § 1.26 of the zoning ordinance:

> (1) *Procedures and Considerations in Granting.* The Town Board, after notifying adjacent property owners ... and conducting a public hearing thereon, may grant a conditional use permit for the conditional uses enumerated in this ordinance.... In considering an application for a conditional use, the Town Board shall consider: the purpose and intended use for the district; the potential conflicts and compatibility of the proposed use with the land involved; the need for the proposed use to be located in the area and the availability of feasible alternate locations; the demand for additional public services created by allowing the proposed use and the ability of local units of government to provide these services without unreasonable burdens; the effect of the proposed use on water, air, soil and other irreplaceable natural resources; *and such other related considerations as the Town Board deems relevant to evaluating a request for a specific type of conditional use permit.*

> (2) *Imposition of Conditions.* The Town Board may attach conditions to a conditional use permit *which it deems necessary to fulfill the purpose and intent of this ordinance.* Violation of such conditions shall constitute a violation of this ordinance and shall constitute sufficient grounds to revoke the permit after public hearing....

> (3) ... In granting a conditional use permit, the Town Board may consider, in addition to those effects enumerated in subsec. (1), the effects on the value or usefulness of neighboring properties of the appearance of buildings and structures proposed to be erected or of premises proposed to be occupied or used....

Town of Wayne, Wis., Zoning Ordinance § 1.26 (1994) (emphasis added).

Section 1.44 of the zoning ordinance governs appeals from decisions made by Town officials pursuant to the above permit procedures. Appeals must be filed "within 30 days after the date of written notice of the decision or order being appealed." Town of Wayne, Wis., Zoning Ordinance, § 1.44(5) (1994). Appeals are made to the Zoning Board of Appeals, who shall then "fix a reasonable time and place for the required public hearing and shall give notice as specified ..." *Id.* at § 1.44(6). The board of appeals is obligated to "decide in writing all appeals and applications within 30 days after the final hearing and shall transmit a signed copy of its decision to the appellant or applicant, Zoning Administrator, Town Plan Commission and Town Board." *Id.* at § 1.44(8).

## VI. ANALYSIS OF 95–C–488 MOTIONS

Special Souvenirs' second federal action, 95–C–488, alleges that the Town's conditional use permit scheme is facially

---

Special Souvenirs raises this point but, in discussing its challenges to the conditional use permit scheme, appears to accept the Town's contention that Ordinance No. 93–1 is effectively defunct. The court will operate on this assumption as well. Accordingly, once Ordinance No. 93–1 is taken off the books, the Town's conditional use permit scheme reverts back to the procedure outlined in § 1.26 of the Town's zoning ordinance.

unconstitutional in several respects. Specifically, the bookstore alleges that (1) the standards for granting or denying such permits are vague and thus fail to limit the discretion of Town officials; (2) the permitting scheme lacks specific and reasonable time limits; and (3) the scheme does not provide for prompt judicial review. In addition, Special Souvenirs claims that the Town's conditional use permit scheme has been applied unconstitutionally to the bookstore in that Special Souvenirs' permit has been conditioned on unreasonably burdensome restrictions on the bookstore's expressive activity.[9] (*See* 95–C–488 Compl. at 13–15).

The Town has filed two dispositive motions in the second federal case. The first, a motion for summary judgment based on claim preclusion, was filed before the court of appeals had rendered its first decision in the state action, but after the state circuit court had rejected Special Souvenirs' constitutional challenges to Ordinance No. 93–1. Obviously, the position of the state courts has changed completely with respect to the bookstore's constitutional claims, substantially mooting most arguments raised in the earlier round of briefing. The court will therefore not consider the Town's initial motion and hereby declares it moot.

After the court of appeals issued its decision, the Town filed a renewed motion for summary judgment and Special Souvenirs also moved for partial summary judgment on liability in the second federal action. The arguments raised in these cross-motions are discussed together in the following sections.

**A. Prior Restraint Analysis**

■■■■ Adult bookstores that sell sexually explicit, nonobscene material engage in expressive activity protected by the First Amendment. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990). Despite this constitutional protection, local governments may use zoning ordinances to impose reasonable time, place and manner restrictions on this type of activity. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). If, however, the particular zoning scheme effectively requires governmental permission before an adult-oriented business may engage in protected activity, then otherwise-valid time, place and manner restrictions are analyzed as prior restraints. *See FW/PBS* at 225, 110 S.Ct. 596. Prior restraints bear a heavy presumption against their constitutional validity. Supreme Court cases have identified two primary situations that render a zoning or licensing scheme unconstitutional under prior restraint analysis: (1) the scheme places "unbridled discretion in the hands of a government official or agency," and (2) the scheme does not limit the time within which the decisionmaker must issue a license or permit. *Id.* at 225–226, 110 S.Ct. 596 (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)). In order to avoid the latter situation and ensure expeditious decisionmaking, the Court has determined that three procedural safeguards are necessary: (1) the license or permit must be issued within specific and reasonable time limits; (2) prompt judicial review of that decision

---

**9.** As pled, Special Souvenirs' fourth claim appeared to be a facial challenge to the Town zoning ordinance alleging that the permitting scheme was unconstitutional because it allowed Town officials to impose unduly burdensome restrictions on permit applicants such as the bookstore. As argued in the briefing, however, the fourth claim is styled as more of an "as applied" challenge to the actual restrictions imposed on Special Souvenirs by the specific permit issued by the Town. As I read the case law, the facial challenge stated above is subsumed by the substance of Special Souvenirs' first claim—that the zoning ordinance fails to limit the discretion of the Town Board in denying permits or in imposing unwarranted conditions. Therefore, I will address the fourth claim as it is briefed—as a constitutional challenge not to the permitting scheme but to the conditional use permit actually issued to the bookstore.

must be available; and (3) the decision-maker must bear the burden of going to court to enforce the decision, and the burden of proof once there. *Id.* at 227, 108 S.Ct. 2138 (citing *Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965)).

The Town's adult use zoning scheme must be analyzed as a prior restraint under the above cases because bookstores such as Special Souvenirs are required to obtain a conditional use permit before lawfully engaging in protected speech. Special Souvenirs argues that the Town zoning provisions governing conditional use permits are facially unconstitutional because they vest unlimited discretion in the Town Board and because they fail to provide two of the *Freedman* procedural safeguards.

## B. Claim Preclusion, Mootness, Standing

As an initial matter, the Town argues that the entire second federal action, 95–C–488, is barred by the doctrine of claim preclusion because the claims raised therein could have been raised in the state court action. *See Northern States Power,* 189 Wis.2d at 550–51, 525 N.W.2d 723. Claim preclusion is not applicable to these proceedings for the same reason that it was inappropriate as to the first federal action—there has been no final judgment on the merits in state court. *See* discussion *supra* Part IV(A)(4).

■ In addition, claim preclusion is unjustified for another reason: Special Souvenirs' claims with respect to the conditional use permit scheme, the substance of the second federal action, are not matters which "might have been litigated in the [state] proceedings." *Northern States Power* at 550, 525 N.W.2d 723. The Town argues that Special Souvenirs' state counterclaims in fact raise the two *Freedman* procedural inadequacy claims—lack of effective time limitations and lack of prompt judicial review—and that the bookstore could easily have included a third counterclaim alleging unlimited discretion. How-

ever, the state counterclaims allege procedural defects in the Town's zoning permit and certificate of occupancy procedures, not the conditional use permit scheme. The claims are interrelated but not identical and rely on different provisions of the Town's zoning ordinance. Arguably, because these are largely facial challenges, Special Souvenirs had everything it needed to identify constitutional problems in all parts of the ordinance, even the conditional use process, at the time it filed its state counterclaim. As a practical matter, however, the bookstore's assertion that the conditional use claims had not yet "accrued" as of February 1994 is substantially correct. (95–C–488 Pl.'s Br. in Opp'n to Def.'s Renewed Summ. J. Mot. at 9.) Special Souvenirs did not apply for a conditional use permit until April 1994; the ramifications of the Town's procedures for processing the conditional use application were not easily apparent before then. And unquestionably, the precise conditions imposed on the bookstore by the conditional use permit ultimately issued in September 1994 could not have been foreseen by Special Souvenirs. Because, realistically, the conditional use permit claims could not have been raised in the state proceedings, claim preclusion is particularly inappropriate in this context.

■ The Town also argues initially that the claims in 95–C–488 are moot because Special Souvenirs has already been issued a conditional use permit and "lack[s] a legally cognizable interest in the outcome." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979). This action is not moot because Special Souvenirs continues to object to the allegedly burdensome restrictions imposed by its conditional use permit, many of which are ongoing, and because the bookstore seeks money damages based on the Town's alleged constitutional violations. *See* discussion *supra* Part IV(A)(3).

Finally, the Town argues that Special Souvenirs does not have standing to raise its facial challenges to the Town's conditional use permit scheme because, having been issued a permit, the bookstore can no longer demonstrate an "injury in fact," or at least not the likelihood that such injury could be "redressed by a favorable decision." *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because Special Souvenirs is seeking money damages for the time it was closed during the conditional use permit process, it can demonstrate both a concrete injury and the possibility of redress by this court.

■ In addition, the general rules of standing are relaxed somewhat in the area of freedom of expression. *See Forsyth County v. Nationalist Movement,* 505 U.S. 123, 129, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992). For example, an overbroad regulation may be subject to facial review and invalidation even if its application in the instant case is unobjectionable: "This exception from the general standing rules is based on an appreciation that the very existence of some broadly written laws has the potential to chill the expressive activity of others not before the court." *Id.* Based on this reasoning, as well, Special Souvenirs has standing to raise its facial challenges to the Town's condition use permit scheme.

### C. Unlimited Discretion

■ Special Souvenirs argues that the Town's zoning ordinance fails to provide sufficient objective standards for granting or denying a conditional use permit, thus conferring unlimited discretion on Town officials. Since conditional use permits are expressly required for adult bookstores pursuant to § 1.26(3)(v) of the zoning ordinance, the lack of objective standards gives the Town Board "substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." *Lakewood,*

486 U.S. at 759, 108 S.Ct. 2138. Although conditional use permits are also required for a variety of non-expressive activities under the zoning ordinance, § 1.26(3)(v) makes the permit system directly applicable to adult bookstores such as Special Souvenirs and establishes "a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks." *Id.*

A long line of Supreme Court precedent, exemplified by *Lakewood* and *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969), supports Special Souvenirs' position. In *Shuttlesworth,* the Court declared unconstitutional a Birmingham ordinance that allowed city officials to deny a parade permit when "the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be refused." *Id.* at 149–50, 89 S.Ct. 935. The Court held that the ordinance, as written, conferred virtually unbridled power to prohibit public demonstrations based on subjective ideas of public welfare and morals. *Id.* at 150, 89 S.Ct. 935. In *Lakewood,* the Court invalidated a city ordinance giving the mayor authority to deny applications for newsrack permits by merely stating the reasons for the denial, or to condition a permit on any terms deemed "necessary and reasonable." *Lakewood* at 753, 108 S.Ct. 2138. Absent any other explicit limits on the mayor's discretion, the ordinance was found unconstitutional. *Id.* at 772, 108 S.Ct. 2138.

In this action, § 1.26(1) of the zoning ordinance sets forth factors the Town Board may consider in reviewing an application for a conditional use permit. The Town also points to Wis.Stat. § 62.23(7),[10] which allows city councils to regulate zoning "[f]or the purpose of promoting health, safety, morals or the general welfare of the community." This language, certainly, and some of the § 1.26(1) factors invite

---

**10.** Applicable to the Town Board by virtue of Wis.Stat. §§ 61.35, 60.62(4) (1999).

highly subjective interpretation. *See* Town of Wayne, Wis., Zoning Ordinance, § 1.26 (1994) ("... the potential conflicts and compatibility of the proposed use with the land involved ..."). More importantly, however, § 1.26(1) factors are not exhaustive, since the Board may consider "any such other related considerations as [it] deems relevant to evaluating a request for a specific type of conditional use permit." *Id.* In addition, the ordinance permits the Board to issue a permit but attach any conditions it "deems necessary to fulfill the purpose and intent of this ordinance." *Id.*

The *Lakewood* court invalidated similar language (or a similar absence of language) because the ordinance gave the decisionmaker effectively unlimited discretion to deny a permit for impermissible reasons or to attach unreasonable conditions to its issuance. *See Lakewood*, 486 U.S. at 769–72, 108 S.Ct. 2138. In this respect, the Town's zoning provisions are distinguished from other licensing schemes upheld in this circuit, which did provide an exhaustive list of content-neutral, objective standards to regulate the permit-granting process. *See, e.g., Graff v. City of Chicago*, 9 F.3d 1309, 1317–18 (7th Cir.1993); *Schultz v. City of Cumberland*, 26 F.Supp.2d 1128, 1137, 1148 (W.D.Wis. 1998); *cf. TJ's South, Inc. v. Town of Lowell*, 895 F.Supp. 1124, 1127, 1129–32 (N.D.Ind.1995).

Although the Town did grant Special Souvenirs' application for a conditional use permit in this instance, nothing in the zoning ordinance prevents the Town Board from denying other permit applications for wholly inappropriate reasons. A narrowing state court construction or well-established local practice may sometimes save an offending ordinance from a finding of unconstitutionality, *see Lakewood*, 486 U.S. at 770 n. 11, 108 S.Ct. 2138, but there has been no evidence of either adduced in this case. In the absence of explicit language limiting the Board's discretion, it is not for this court to presume that Town officials will always act in good faith. *Id.* at 770, 108 S.Ct. 2138. Accordingly, the Town's conditional use permit scheme is unconstitutional when enforced against businesses engaging in First Amendment activity because it fails to limit the discretion of decisionmaking officials.

### D. Lack of Reasonable Time Limits

■ Special Souvenirs next argues that the Town's conditional use permit scheme is unconstitutional because it fails to provide specific and reasonable time limits within which a permit must be issued, as required by *Freedman*. The controlling precedent on this issue is *FW/PBS*. In that case, the Supreme Court held that a Dallas licensing scheme regulating sexually oriented businesses failed to provide effective time limits because, although the ordinance directed the police chief to issue a license within 30 days of receipt of an application, it also prevented a license from being issued if the premises were not approved as fully compliant by city health, fire and building officials. *FW/PBS*, 493 U.S. at 227, 110 S.Ct. 596. The ordinance established no deadline for the official inspection process to be completed; thus, it provided no means for an applicant to insure that the business would be inspected within the purported 30–day time period. *Id.* Among other things, *FW/PBS* stands for the proposition that interrelated licensing provisions should be read in conjunction with one another to best gauge their practical significance.

In the instant case, the Town's zoning ordinance places no time limits on the issuance of a conditional use permit. The Town points to § 1.01(2)(d) of the zoning ordinance, which states that "[e]very effort shall be made to approve zoning permit applications within 7 days of application." Town of Wayne, Wis., Zoning Ordinance, § 1.01 (1994). This provision neither applies to the conditional use permit process, nor does it constitute a sufficiently firm directive to Town officials. Indeed, Special Souvenirs applied for all necessary

permits by April 1994, but a zoning permit was not issued until that October. The Town suggests that "[i]n the context of the conditional use permit process, the seven days commence to run when the application is complete which includes the holding of a public hearing." (95–C–488 Def.'s Br. in Opp'n to Pl.'s Summ. J. Mot. at 9.) This argument is specious. The Town's ordinance does not make the seven-day "limit" applicable to the conditional use permit process, and it certainly does not set the clock running with the holding of a public hearing.

There is no question that a prior restraint such as the Town's conditional use permit scheme that imposes no time limitations on the decisionmaking process fails to satisfy the first *Freedman* requirement. *See Riley v. National Fed'n of the Blind of North Carolina*, 487 U.S. 781, 802, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988); *Vance v. Universal Amusement Co.*, 445 U.S. 308, 316, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980); *Muller by Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1547 (7th Cir.1996) (Rovner, J., concurring) ("[A] regulation containing no limitation whatsoever on the review period would not pass constitutional muster."); *11126 Baltimore Blvd., Inc. v. Prince George's County*, 58 F.3d 988, 997 (4th Cir.1995). Licensing ordinances which countenance a delay of up to five months in issuing a reviewable decision have also been found to violate the First Amendment. *See Id.* at 997 ("Although zoning decisions necessarily involve a detailed examination of numerous factors, we are unable to conclude that 150 days is a reasonably brief time frame within which to render a decision."); *East Brooks Books, Inc., v. City of Memphis*, 48 F.3d 220, 225 (6th Cir.1995) ("Although the Supreme Court has not expressly defined prompt judicial review, we believe that potential delays of over five months are impermissible.")

Although Special Souvenirs raises a facial challenge on the question of time limits, the facts of this case demonstrate clearly why the Town's adult use permit scheme has the potential to chill First Amendment freedoms. It is undisputed that Special Souvenirs' application for a conditional use permit, without which it could not lawfully operate, was pending with the Town Board for *at least* five months. During that time the Town convened a public hearing, considered the matter and requested more and more information, while the bookstore remained closed. This is precisely the sort of "indefinite postponement of the issuance of a license" rejected by the Supreme Court. *FW/PBS*, 493 U.S. at 227, 110 S.Ct. 596. Because it lacks reasonable and specific decisonmaking time limits, the Town's conditional use permit scheme is unconstitutional as applied to businesses engaged in First Amendment activity.

**E. Lack of Prompt Judicial Review**

 Finally, Special Souvenirs argues that the Town's adult use permitting scheme fails to provide for prompt judicial review in the event that a conditional use permit is denied, as required by *Freedman*.

As described above, the Town's zoning ordinance provides that appeals of a permit denial must be filed with the Zoning Board of Appeals within thirty days of the written decision denying the permit. *See* Town of Wayne, Wis., Zoning Ordinance § 1.44(5) (1994). The ordinance requires the appeals board to "fix a reasonable time and place for the required public hearing" and to give adequate public notice. *Id.* at § 1.44(6). I do not read this provision as requiring the public hearing to be held *within* a reasonable time, as the clear purpose of the provision appears to be to ensure public access to and participation at the hearing. Therefore, although the board of appeals is directed to decide the appeal in writing within thirty days of the hearing, *id.* at § 1.44(8), because the hearing itself may be postponed indefinitely there is no guarantee of a final administrative decision within a specified period.

In Wisconsin, a person aggrieved by the decision of a municipal body such as the Town's Zoning Board of Appeals may commence an action in state court seeking certiorari review within thirty days of the appeals board decision. *See* Wis.Stat. §§ 62.23(7)(e)10; 61.35; 60.62(1). The state circuit court does not have jurisdiction to hear appeals of permit denials unless the matter was first appealed to the local zoning appeals board. *Nodell Inv. Corp. v. City of Glendale*, 78 Wis.2d 416, 417, 254 N.W.2d 310 (1977).

In *Graff v. City of Chicago*, the Seventh Circuit held that the remedy of a common law writ of certiorari, when functioning as a state's routine method of reviewing municipal decisions, satisfies the *Freedman* requirement for prompt judicial review.[11]

11. *Graff* was an *en banc* decision by a fractured, twelve-judge court. The plurality decision, authored by Judge Manion and joined by five judges, explicitly found that the availability of Illinois' common law writ of certiorari was an adequate provision of prompt judicial review under *Freedman*, although the Chicago municipal ordinance at issue made no mention of judicial review. *Graff*, 9 F.3d at 1324–25. The first concurrence and the dissent, together joined by five judges, just as explicitly rejected the conclusion that the certiorari procedure provided an "adequate substitute for an explicit system of swift judicial review set out in the licensing law." *Id.* at 1331; 1331–33 (Flaum, J., concurring); 1340–41 (Cummings, J., dissenting). The second concurring opinion was silent on the specific question of judicial review, *see id.* at 1333–35 (Ripple, J., concurring), although at most two of its three signatories agreed with the plurality on this point, since Judge Cudahy joined both the first and second concurrences. Thus, the adequacy of state certiorari review in the prior restraint context produced at best a seven-five split in the *en banc* court, favoring the plurality position. (I disagree with the *Graff* head count as tallied by the Fourth Circuit in *11126 Baltimore Blvd.*, 58 F.3d at 1000 n. 17.)

The issue for the *Graff* court and other circuits that have addressed this question is whether routine certiorari review procedures comport with the heightened need for speedy judicial review when the suppression of First Amendment activity is at stake. As expressed in *Freedman*,

> [t]he teaching of our cases is that, because only a judicial determination in an adversary proceeding ensures the necessary sensitivity to freedom of expression, only a procedure requiring a judicial determination suffices to impose a valid final restraint.... Any restraint imposed in advance of a final judicial determination on the merits must similarly be limited to preservation of the status quo for the shortest fixed period compatible with sound judicial resolution.

*Freedman*, 380 U.S. at 58–59, 85 S.Ct. 734. Other circuits read *Freedman* to require more than prompt *access* to state review procedures, such as certiorari review, but to actually require some assurance that a prompt judicial *determination* will be issued. *See, e.g., Baby Tam & Co., Inc. v. City of Las Vegas*, 154 F.3d 1097, 1101–03 (9th Cir.1998) (striking down a city zoning ordinance that failed to guarantee a prompt decision by Nevada state courts).

The *Graff* dissent, like *Baby Tam* and *Freedman* itself, cites as a model of expeditious review a New York injunctive procedure designed to prevent the sale of obscene books, upheld in *Kingsley Books, Inc. v. Brown*, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957). It is worth pointing out that *Kingsley Books* involved a New York statute authorizing the chief executive or legal officer of a municipality to file suit to enjoin the sale or distribution of obscene material, and then requiring the state court to try and decide the case within a matter of days. There are obvious differences in the ability of a city council or town board to insist on a swift decision from state courts over which it has no authority. In response to this objection, the *Graff* dissent notes that nothing "prevent[s] the municipality from specifying an expedited procedure, or petitioning the state legislature for a minor change in the law ..." *Graff* at 1341 (Cummings, J., dissenting). This seems a lot to ask of local zoning officials.

And in Wisconsin, the law may not be in such bad shape to begin with. Section 62.23(7)(e)15 of the Wisconsin Statutes provides that a state court conducting certiorari review of a zoning board of appeals decision shall afford those proceedings "preference over all other civil actions and proceedings." *See also State ex rel. Miller v. Manders*, 2 Wis.2d 365, 373, 86 N.W.2d 469 (1957). In theory, then, if a Wisconsin circuit court is dragging its feet about promptly reviewing the denial of an adult use zoning permit, the resolute permit-seeker could mandamus the court to comply with this directive. On the other hand, Wisconsin courts reviewing municipal zoning decisions pursuant to a writ of certiorari are strictly limited by a deferential standard of review. *See Town of Hudson v. Hudson Town Bd. of Adjustment*, 158 Wis.2d

*See Graff,* 9 F.3d at 1324–25; *but see Redner v. Dean,* 29 F.3d 1495, 1501–02 n. 9 (11th Cir.1994) (discussing ambiguity in Supreme Court jurisprudence regarding appropriate mechanisms for judicial review in prior restraint context); *Gasparo v. City of New York,* 16 F.Supp.2d 198, 213–14 (E.D.N.Y.1998) (collecting divergent cases from different circuits).

Unlike the instant case, however, the newsstand permitting scheme at issue in *Graff* set up a strict timetable for public hearings and appeals after an initial permit denial. *See Graff* at 1324 n. 10. Here, the Town's zoning ordinance does not insure that a final determination of the Zoning Board of Appeals will be promptly issued and ready for certiorari review because it does not require the necessary public hearing to be held within a brief and specified period after the permit is denied. In this respect, the Town's permitting scheme more closely resembles licensing schemes struck down by other circuits for failing to provide prompt judicial review in light of the potential for delay *before* review procedures become available. *See Redner* at 1502 (11th Cir.1994) (finding that ordinance "creates the risk that expressive activity could be suppressed indefinitely prior to any judicial review of the decision to deny a license"); *East Brooks Books,* 48 F.3d at 225 (6th Cir. 1995); *FW/PBS,* 493 U.S. at 229, 110 S.Ct. 596. In keeping with these decisions, the Town's conditional use permit scheme also fails to guarantee access to prompt judicial review and is unconstitutional as applied to businesses engaged in First Amendment activity for this reason, as well.

**F. Burdensome Restrictions**

██ Special Souvenirs' final claim challenges the validity of the conditions imposed on it by the conditional use permit ultimately issued to the bookstore on September 21, 1994. (*See* 95–C–488 Phillips

263, 275–76, 461 N.W.2d 827 (Ct.App.1990) ("[W]e are hesitant to interfere with the zoning decision of the town board and will not

Aff. 9/15/97, Ex. C.) The permit was issued pursuant to standards and procedures set forth in § 1.26 of the Town's zoning ordinance. In significant part, these procedures are unconstitutional based on the discussion in the preceding sections of this opinion. Conditions imposed and permits issued pursuant to unconstitutional licensing procedures are also presumptively invalid. *See FW/PBS,* 493 U.S. at 223, 110 S.Ct. 596 ("Because we conclude that the city's licensing scheme lacks adequate procedural safeguards, we do not reach the issue [of] whether the ordinance is properly viewed as a content-neutral time, place, and manner restriction aimed at secondary effects arising out of the sexually oriented businesses.").

Therefore, it is unnecessary for me to address the merits of Special Souvenirs' final claim. I note, however, that cases in this circuit addressing similar restrictions in other local permitting schemes suggest that several of the specific conditions imposed on Special Souvenirs may not be defensible under the standards set forth in *Renton,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29; *American Mini Theatres,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310; and *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *See Schultz,* 26 F.Supp.2d 1128; *Suburban Video, Inc. v. City of Delafield,* 694 F.Supp. 585 (E.D.Wis.1988); *but see Tee & Bee, Inc. v. City of West Allis,* 936 F.Supp. 1479 (E.D.Wis.1996).

## VII. CONCLUSION

Based on the foregoing discussion, the Town's renewed motion for summary judgment in 95–C–488 will be denied. Further, because the Town's conditional use permit scheme is unconstitutional as applied to businesses engaging in First Amendment activity, Special Souvenirs is entitled to partial summary judgment on liability in its second federal action. As

substitute our discretion for that committed to the town board by the legislature.").

with the first federal action, the question of damages has yet to be addressed.

With this order, federal cases 93–C–518 and 95–C–488 are hereby consolidated for future processing, pursuant to Fed. R.Civ.P. 42(a) and in accordance with Local Rule § 4.03 (E.D.Wis.). Specific motions and allegations may still be identified with reference to the original case number, but all documents will be filed and docketed with the lowest-numbered case.

**NOW, THEREFORE, IT IS OR-DERED** that the Town's renewed motion for summary judgment in 93–C–518 is **DE-NIED.** All previous dispositive motions by the Town in 93–C–518, and the related magistrate judge recommendation, are officially declared **MOOT.**

**IT IS ALSO ORDERED** that Special Souvenirs' motion for partial summary judgment based on preclusion in 93–C–518 is **GRANTED.** The earlier summary judgment motion by Special Souvenirs in 93–C–518, and the related magistrate judge recommendation, are also officially declared **MOOT.**

**IT IS ALSO ORDERED** that the Town's renewed motion for summary judgment in 95–C–488 is **DENIED.** The earlier summary judgment motion by the Town in 95–C–488 is officially declared **MOOT.**

**IT IS ALSO ORDERED** that Special Souvenirs' motion for partial summary judgment in 95–C–488 is **GRANTED.**

**FINALLY IT IS ORDERED** that Cases 93–C–518 and 95–C–488 are hereby consolidated for future processing in accordance with Local Rule § 4.03.